947 F.2d 432
 S & S PAWN SHOP INCORPORATED; Andrew W. Eckert, doing
business as S & S Pawn Shop Incorporated,
Plaintiff-Appellant,
v.
CITY OF DEL CITY; Ennis St. Clair, as Police Chief of Del
City; Tom Rogers, as Police Chief of Del City; J.
Baranski, as Police Officer for Del City; M.L. Robinson, as
Police Officer for Del City; and J. Hughes, as Police
Officer for Del City, Defendants-Appellees.
 No. 90-6101.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 9, 1991.
 
 Laurence K. Donahoe (J. Greg Davis, with him on the brief), of Davis & Associates, Oklahoma City, Okl., for plaintiff-appellant.
 Ted N. Pool (Sherry Blankenship, with him on the brief), of Pool, Thompson, Coldiron, Blankenship & Vincent, Oklahoma City, Okl., for defendants-appellees.
 Before McKAY, Chief Judge, HOLLOWAY, Circuit Judge, and WINDER, District Judge.[1]
 McKAY, Chief Judge.
 
 
 1
 Appellant seeks reversal of the district court's determination that Okla.Stat.Ann. tit. 59, § 1508 (West 1989), which authorizes warrantless inspections of pawnshops, does not violate the fourth amendment of the United States Constitution. He also urges that the district court incorrectly abstained from deciding the constitutionality of Okla.Stat.Ann. tit. 21, § 1092 (West 1983).
 
 I.
 
 2
 Appellant Andrew W. Eckert is the owner and operator of S & S Pawnshop, Inc. in Del City, Oklahoma.[2] In 1985 and 1986, Del City police officers conducted warrantless searches of the pawn shop and seized property that had been reported as stolen. The items were taken for use as evidence in criminal proceedings. Some of the items were later delivered to individuals who had reported the items stolen. Others were released by the Del City Police Department to other law enforcement agencies.
 
 
 3
 The police officers conducted the warrantless searches pursuant to section 1508 of the Oklahoma Pawnshop Act, Okla.Stat.Ann. tit. 59, §§ 1501-15 (West 1989). Section 1508 establishes that the books, records, and property of pawnbrokers licensed by the state may be examined without a warrant. The statute specifies that the chief of police or written designee of the law enforcement body in whose jurisdiction the pawnshop is located may perform the examination. Failure to permit an examination of such books, records, or property constitutes grounds for the suspension or revocation of the pawnbroker's license.[3]
 
 
 4
 Though raised nowhere in appellant's complaint or other pleadings in the district court nor in his brief before this court, depositions appended to the parties' memoranda in support of their respective motions for partial summary judgment evidence the procedure used by the Del City policemen when searching appellant's business. Though the record does not indicate whether the process is routine or pursuant to a pre-planned scheme, the police apparently collected pawn tickets from appellant and ran any identification number on the pawned item through the National Crime Information Center. When the identification and description of the pawned item matched the identification number and description of a stolen item on the NCIC or other police report, the police officers traveled to appellant's business and, without a warrant, demanded that they be shown the item. One affidavit indicated that such a search was also pursued when an individual who pawned the item was suspected of trafficking in stolen goods. In particular, eight items listed in appellant's complaint apparently were subjected to such an "inspection" and subsequently confiscated, also without a warrant. In count three of his complaint, appellant alleges that the officers were acting pursuant to the state provision whose constitutionality is under attack here. Appellant never makes clear, however, whether the inspection of the pawn tickets or the later inspection and confiscation of the pawned items are at issue.
 
 
 5
 Appellant filed this action requesting that the district court order appellees to cease all searches of S & S Pawn Shop, Inc. without a valid search warrant. He also sought an order by the court declaring Okla.Stat.Ann. tit. 59, § 1508 unconstitutional for overbreadth and vagueness. In addition, appellant challenged the constitutionality of Okla.Stat.Ann. tit. 21, § 1092, which establishes that any pawnbroker who refuses to exhibit stolen goods to a peace officer or the owner of the goods is guilty of a felony.
 
 
 6
 The district court granted summary judgment in favor of appellees on the ground that the warrantless searches made pursuant to section 1508 fall within the exception to the warrant requirement for inspections of "closely regulated" businesses. See New York v. Burger, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). In reaching its conclusion, the district court appears to have treated appellant's challenge to the Oklahoma provision as a facial challenge and did not review the statute as it was applied to him. The court abstained from deciding the constitutionality of Okla.Stat.Ann. tit. 21, § 1092 because the statute was subject to an interpretation that would avoid a constitutional question. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979). We review the district court's conclusions of law de novo. In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988).
 
 II.
 
 7
 The fourth amendment prohibits unreasonable searches and seizures. As a general rule, warrantless searches are unreasonable, and this rule applies to both commercial premises as well as homes. Marshall v. Barlow's, Inc., 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978). The Supreme Court has recognized an exception to the warrant requirement whereby warrantless administrative searches may be reasonable within the meaning of the fourth amendment when the premises are used in a closely regulated business or industry. See, e.g., New York v. Burger, 482 U.S. at 691, 107 S.Ct. at 2636 (automobile junkyards); Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (mines); United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (firearms); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (alcoholic beverages). Warrantless inspections of commercial enterprises in a closely regulated industry are reasonable if the inspection satisfies three criteria:
 
 
 8
 First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made....
 
 
 9
 Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." ...
 
 
 10
 Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." ... In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.
 
 
 11
 Burger, 482 U.S. at 702-703, 107 S.Ct. at 2644 (citations omitted).
 
 
 12
 When the regulatory scheme is sufficiently comprehensive and defined, "the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." Donovan, 452 U.S. at 600, 101 S.Ct. at 2538. The scheme guarantees that the individual's privacy interest and the state's interest in law enforcement are properly balanced. See Barlow's, Inc., 436 U.S. at 321, 98 S.Ct. at 1825 ("The reasonableness of a warrantless search ... will depend upon the specific enforcement needs and privacy guarantees of each statute.")
 
 
 13
 Pawnbrokers must obtain a license from the State. Okla.Stat.Ann. tit. 59, § 1503 (West 1989). The Administrator of Consumer Affairs reviews the criminal record and net worth of license applicants, Okla.Stat.Ann. tit. 59, § 1503A, and conducts an investigation into an applicant's experience, character, and financial responsibility. Okla.Stat.Ann. tit. 59, § 1505(A). Every applicant must file a $5000.00 bond with the Administrator. Okla.Stat.Ann. tit. 59, § 1504(B).
 
 
 14
 After a license is issued, the method of operation of pawnshops is monitored closely. The maximum allowable pawn finance charges are set by statute. Id., § 1510. Pawnbrokers are required to make extensive disclosures to their customers concerning the specifics of pawn transactions. Id., § 1509. Advertising must conform to certain requirements to avoid misleading customers. Id. Further, under the Act's reporting requirements, pawnbrokers must make available to the local law enforcement agency a report of each pawn transaction within three days of the transaction. Id., § 1515. Pawnbrokers are also required to maintain books and records so that the Administrator can determine whether the licensee is complying with the statutory requirements. Id., § 1508(C).
 
 
 15
 In light of this broad range of requirements, we conclude that pawn transactions are a closely regulated business in Oklahoma. Oklahoma's inspection scheme nevertheless must also satisfy the three criteria necessary for constitutionally reasonable, albeit warrantless, searches.
 
 A.
 
 16
 Appellees argue that the pawn shop industry is closely connected to a flow of goods that contains stolen property and that the statute therefore advances the government's substantial interest in controlling property theft. Appellant counters this position by emphasizing that of all pawn transactions in 1986 and 1987, only one-tenth of one percent were confiscated from pawnbrokers by law enforcement officials.[4] Given this small percentage, appellants maintain that Oklahoma does not have a substantial government interest in regulating pawnbrokers.
 
 
 17
 We decline to adopt the position urged by appellant. First, appellant would have us discount the government interest in any regulatory scheme that has successfully furthered its purpose. In effect, we would be required to strike down warrantless inspections of pawnshops because the statutory scheme has succeeded in controlling property theft. Further, the Court in Burger approved warrantless inspections of automobile junkyards, in part, because the junkyards provided the major market for stolen automobiles. Burger, 482 U.S. at 708-709, 107 S.Ct. at 2646-47. Significantly, the Court did not examine the percentage of stolen cars actually associated with junkyards. It is uncontested that pawnshops provide a market for stolen property. Although one-tenth of one percent may appear to be a small figure, we conclude that approximately 1000 pawn transactions per year surrendered to law enforcement officials are substantial.
 
 
 18
 Appellant makes two additional arguments regarding the government's interest in conducting warrantless inspections. First, he contends that the statute fails to articulate a government interest in controlling property theft. Second, appellant maintains that because the real government interest is the administrative regulation of pawnshop lending practices, law enforcement officials are not needed to satisfy this interest.
 
 
 19
 We are not persuaded by either of these contentions. Contrary to appellant's position, the Oklahoma Pawnshop Act adequately states the government interest in controlling property theft by making it a felony for any person to sell or pledge property to a pawnbroker using false identification of ownership. Okla.Stat.Ann. tit. 59, § 1512(C)(2) (West 1989). Further, the use of peace officers to conduct administrative searches does not make the warrantless inspections unconstitutional. As the Court stated in Burger, an administrative scheme "is not rendered illegal by the fact that the inspecting officer has the power to arrest individuals for violations other than those created by the scheme itself." Burger, 482 U.S. at 717, 107 S.Ct. at 2651.
 
 B.
 
 20
 The second criteria is that the warrantless inspections must be necessary to further the regulatory scheme. In Burger, the Court noted that warrantless inspections of automobile junkyards served to deter car theft by identifying stolen vehicles and by eliminating the market for these items. Moreover, due to the fact that stolen cars often pass quickly through a junkyard, the Court concluded that frequent and unannounced inspections were necessary to identify them. Id., at 710, 107 S.Ct. at 2648.
 
 
 21
 Similar circumstances in the pawnbroking business reveal the necessity of warrantless inspections. Stolen property may pass quickly through a pawn shop because items bought by pawnbrokers must be held for only ten days before being sold. Okla.Stat.Ann. tit. 59, § 1515(B) (West 1989). Unannounced inspections also deter thieves from marketing stolen property due to the prospect of unanticipated monitoring of pawn transactions by law enforcement officials. See Biswell, 406 U.S. at 316, 92 S.Ct. at 1596 (unannounced inspections essential to serve as a credible deterrent to those seeking to evade federal firearms regulations by transferring firearms to a pawn shop operator).
 
 C.
 
 22
 Finally, the inspection program must provide a constitutionally adequate substitute for a warrant. Initially we note that the Oklahoma statute provides notice to individuals licensed as pawn brokers that they will be subject to warrantless inspections. Cf. V-1 Oil Co. v. State of Wyo., Dep't of Env. Quality, 902 F.2d 1482, 1487 (10th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990) (Wyoming Environmental Quality Act failed to inform owner of any particular business that property will be subject to warrantless inspections). Pawn brokers are also made aware that the investigations are conducted "[f]or the purpose of discovering violations of [the Oklahoma Pawnshop Act] or of securing information" required by the Act. Okla.Stat.Ann. tit. 59, § 1508(B).
 
 
 23
 Appellant nevertheless argues that the statute is overbroad because it allows officials to inspect documents not connected to property reported as stolen. The Act requires pawnbrokers to record and make available to law enforcement officials information such as the serial number of the item, the date of the transaction, and identification information on the seller. Okla.Stat.Ann. tit 59, § 1515 (West 1989). We believe all this information pawnbrokers are required to record is potentially relevant to an investigation of stolen property by law enforcement officials. We therefore cannot agree that officials are authorized to inspect records unconnected to stolen property.[5]
 
 
 24
 If the statute is to provide a constitutionally adequate substitute for a warrant, it must also establish the regularity with which inspections will occur. Although appellant argues that the statute fails to notify pawnbrokers of the frequency of inspections, the Supreme Court has not required great specificity in this regard. In Burger, the Court noted that the absence of a fixed number of inspections for a particular time period was not determinative "so long as the statute, as a whole, places adequate limits upon the discretion of the inspecting officers." Burger, 482 U.S. at 711 n. 21, 107 S.Ct. at 2648 n. 21. The inspection program at issue in Burger stated that inspections were allowed only " 'during [the] regular and usual business hours.' " Id., at 711, 107 S.Ct. at 2648 (citation omitted). The Oklahoma statute requires that inspections occur only at a "reasonable time." Although standing alone this language could be interpreted broadly, in light of the restraints contained elsewhere in the inspection scheme which stipulate that only pawnshops are subject to such a search and what may be properly inspected, given the limits approved in Burger we do not find that this unusually broad language renders the statute unconstitutional.
 
 
 25
 Appellant also maintains that the statute lacks restrictions to limit the discretion of the officers conducting the search. Initially, we note that the statute defines the place and the scope of the search. Inspections are limited to licensed pawn shops. Officials may only examine the pawnshop itself and those records that pertain to the business regulated by the Act.
 
 
 26
 We nevertheless are concerned with appellant's contention relating to whom the statute authorizes to search his business premises. Appellant urges that the statute's broad language, which permits inspection by "federal law enforcement officials and the chief of police, district attorney, sheriff or written designee of the law enforcement body in whose jurisdiction the pawnshop is located," provides him no notice of who may be conducting the administrative search and allows authorities unconnected with the enforcement of the Oklahoma Pawnshop Act warrantless access to his business. He provides an example of military policemen who he alleges have requested inspection at pawnshops near military installations.
 
 
 27
 Before beginning our analysis of appellant's admittedly troubling hypothetical, we first must determine how to analyze such a facial challenge alleging vagueness and overbreadth against a statute permitting warrantless administrative searches in a closely regulated business. It is clear from the limited facts set forth by the appellant in his complaint that the searches and seizures at his business premises were not conducted by military policemen. It is equally clear, however, that the provision in question could be interpreted to condone such a search. The appellant asks us to void for vagueness the provision based on this interpretation.
 
 
 28
 Ordinarily, a state law is unconstitutionally vague on its face for purposes of a due process challenge only when its terms are stated in such generality that "no standard of conduct is specified at all." Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). In particular, facial challenges of a licensing or regulatory scheme are disfavored. "[W]hen considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975).
 
 
 29
 Appellant challenges the Oklahoma provision because it is both unconstitutionally overbroad and vague. In Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Supreme Court faced a similar allegation involving a state statute requiring a business to obtain a license if it sells items designed or marketed for use with illegal substances. The Court held that when reviewing a facial challenge to the overbreadth and vagueness of a statute, a court must first determine whether the statute reaches a substantial amount of constitutionally protected conduct. If it does not, the overbreadth challenge must fail. The court should then proceed to the facial vagueness challenge and should uphold the statute unless it is impermissibly vague in all of its applications. Id. at 494-95, 102 S.Ct. at 1191-92.
 
 
 30
 It is unclear whether the standard set forth in Hoffman Estates, which addressed a due process challenge based on First Amendment infringement, should apply to a challenge of a statute authorizing a warrantless search.[6] In particular, we are not faced with a challenge to a statute that proscribes conduct, which would be the basis of a due process challenge for vagueness, but instead must pass judgment on a statute that permits certain conduct--a warrantless search. Admittedly, a primary concern of a challenge based on vagueness in both situations is that the provision not be so vague that it allows arbitrary or discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972). Yet appellant does not present activity in which he or others would like to engage which is "chilled" by virtue of the statute's very existence.
 
 
 31
 In any event, we need not decide whether to extend the standard of Hoffman Estates to a scheme permitting warrantless searches of a closely regulated industry. Even under the more exacting standard of Hoffman Estates, a statute allowing the rare search conducted by a military policeman, in our opinion, is not so substantially overbroad to render it unconstitutional on its face. See Secretary of State of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 965, 104 S.Ct. 2839, 2851, 81 L.Ed.2d 786 (1984). Appellant must therefore demonstrate that the statute as applied to him is unconstitutional. Id. at 965, 104 S.Ct. at 2851.
 
 
 32
 The opinion by the district court, however, does not attempt to analyze the statute as it was applied to appellant. Because appellant's complaint makes specific reference to the search conducted in his pawn shop and contains an allegation that those searches were conducted pursuant to the statute at issue, we believe the district court erred when it granted summary judgment in favor of the appellee.
 
 
 33
 We review a summary judgment order using the same standard as the district court. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, "[w]hen a motion for summary judgment is granted, it is the appellate court's duty to examine the record to determine if any genuine issue of material fact was in dispute; if not, the court must determine if the substantive law was correctly applied." Osgood, 848 F.2d at 143. This duty is no less exacting if summary judgment was entered upon cross-motions. The moving party carries the burden to demonstrate that it is entitled to summary judgment, and we review the record in the light most favorable to the nonmoving party. Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir.1987).
 
 
 34
 The depositions attached to appellant's motion for summary judgment at the district court make plain that the inspections of his premises were conducted only after a pawned item matched an item reported as stolen or when the person who pawned the item was known to traffic in stolen goods. Although the Court in Burger sanctioned an administrative scheme which would also reveal violations of penal laws, Burger, 482 U.S. at 713, 107 S.Ct. at 2649, it did not endorse a scheme that would allow a warrantless search based on recently discovered evidence that criminal activity had occurred. It cautioned that "[s]o long as a regulatory scheme is properly administrative, it is not rendered illegal by the fact that the inspecting officer has the power to arrest individuals for violations other than those created by the scheme itself." Id. at 717, 107 S.Ct. at 2651 (footnote omitted). Other decisions have also emphasized the administrative nature of the search at issue. See Donovan, 452 U.S. at 604, 101 S.Ct. at 2541 ("Thus, rather than leaving the frequency and purpose of inspections to the unchecked discretion of Government officers, the Act establishes a predictable and guided federal regulatory presence."); Barlows, Inc., 436 U.S. at 323, 98 S.Ct. at 1826 ("A warrant ... would provide assurances ... that the inspection ... is pursuant to an administrative plan containing specific neutral criteria."); Id. at 332, 98 S.Ct. at 1830 (Stevens, J., dissenting) ("The inspection warrant is supposed to assure the employer that the inspection is in fact routine, and that the inspector has not improperly departed from the program of representative inspections established by responsible officials."); see, See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) ("The inspection was conducted as part of a routine, periodic city-wide canvass to obtain compliance with Seattle's Fire Code.") That the initial inspection of the pawn tickets at the police station were pursuant to a neutral administrative scheme is not dispositive. Cf. Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (though initial warrantless entry into blazing building due to exigent circumstances permitted investigation for arson, additional access to the building based on probable cause to believe that arson occurred required warrant obtained upon traditional showing of probable cause applicable to searches for evidence of a crime). As evidenced in the depositions, appellant presents material facts demonstrating that the inspections of appellant's business premises were conducted not as part of a pre-planned and dispassionate administrative procedure but instead pursuant to direct criminal suspicion. Such a search gives cause for grave constitutional concern.[7] A proper administrative search is conducted on neutral criteria to restrain the discretion of the officer in charge of the search. Appellant presents material issues of fact concerning the "administrative" nature of the inspection of his premises, and therefore calls into question whether the statute provides sufficient limitations on the discretion of those in charge of carrying out its mandate.
 
 
 35
 We cannot fault the district court for its failure to analyze the constitutionality of the state provision as it was applied to the appellant. The briefs filed in this court and the memoranda of authority submitted in the district court only deal with the provision in broad sweeping generalities and hypothetical situations. It nevertheless appears from the complaint and depositions attached to the parties' motions and memoranda of law in the district court that appellant has a genuine concern regarding how the challenged provision was applied to him. Because we are charged with searching the record to determine whether a genuine issue of material fact may prevent a grant of summary judgment, we cannot sustain the district court's order granting summary judgment in favor of the appellees. We remand the cause to the district court to proceed with appellant's challenge of the provision as it was applied to him.
 
 IV.
 
 36
 Appellant also argues that the district court erred when it abstained from deciding the constitutionality of Okla.Stat.Ann. tit. 21, § 1092. He maintains that the statute is unconstitutionally vague because it does not provide notice of what conduct is prohibited.[8] Specifically, appellant contends that the statute fails to specify how a pawnbroker ascertains whether goods are stolen, that it fails to describe how a pawnbroker determines the owner of the goods, and that the statute does not define "peace officer."
 
 
 37
 As a preliminary matter, we note that appellant has not been charged with a felony under section 1092. Nonetheless, he is not required to subject himself to an actual arrest or prosecution to be entitled to challenge a statute. Due to the repeated warrantless inspections conducted in 1986 and 1987, appellant has sufficiently demonstrated a real danger that he would be directly injured by the statute's enforcement. See O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).
 
 
 38
 Abstention is a narrow exception to the duty of a district court to adjudicate a controversy properly before it, and is used only in exceptional circumstances. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1062-63, 3 L.Ed.2d 1163 (1959). It is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." Id., at 189, 79 S.Ct. at 1063; see also R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (district court should abstain where state court ruling on ambiguous state law will moot sensitive federal claim). This doctrine, known as Pullman abstention, " 'contemplates that deference to state court adjudication only be made where the issue of state law is uncertain.' " Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979) (quoting Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965) ). By requiring that the state law be ambiguous, federal courts avoid basing a constitutional decision on a forecast of state law that may later be displaced by an authoritative state adjudication. See Pullman, 312 U.S. at 500, 61 S.Ct. at 645.
 
 
 39
 Appellant argues that the statute is impermissibly vague because it fails to set forth how pawnbrokers are to determine whether goods are stolen or embezzled. Section 1092, however, is sufficiently ambiguous that the Oklahoma courts could reasonably interpret it as requiring pawnbrokers to knowingly receive stolen goods before they are guilty of a felony. See Babbitt, 442 U.S. at 309, 99 S.Ct. at 2314. This construction would resolve appellant's concern.
 
 
 40
 Further, although the statute does not state how a pawnbroker determines whether an individual demanding to see stolen goods is the rightful owner of the goods, it could be construed as requiring that pawnbrokers obtain the same demonstration of ownership that they must obtain from sellers and pledgers making transactions--a display of official identification and a written declaration of ownership. See Okla.Stat.Ann. tit. 59, §§ 1511(C)(7), 1515(D). We also agree with the district court's determination that "peace officer" is a term subject to a reasonable interpretation by the Oklahoma courts. One such interpretation is that "peace officer" means those individuals authorized to conduct a warrantless search pursuant to Okla.Stat.Ann. tit. 59, § 1508. See supra n. 3. We therefore conclude that the district court correctly abstained from deciding the constitutionality of Okla.Stat.Ann. tit. 21, § 1092.
 
 
 41
 The order of the district court on appellant's challenge of Okla.Stat.Ann. tit. 59, § 1508 is REVERSED. The district court's decision to abstain from deciding Okla.Stat.Ann. tit. 21, § 1092 is AFFIRMED. The cause is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation
 
 
 [2]
 Appellant is engaged in the business of making pawn transactions. Under Oklahoma law, a pawn transaction is defined as "the act of lending money on the security of pledged goods or the act of purchasing tangible personal property on condition that it may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." Okla.Stat.Ann. tit. 59, § 1502(6) (West 1989)
 
 
 [3]
 The statute provides:
 At such times as the Administrator [of Consumer Affairs] may deem necessary, the Administrator or his duly authorized representative may make an examination of the place of business of each licensee and may inquire into and examine the transactions, books, accounts, papers, correspondence and records of such licensee insofar as they pertain to the business regulated by this act. Such books, accounts, papers, correspondence, records and property taken, purchased or received shall also be open for inspection at any reasonable time to federal law enforcement officials and the chief of police, district attorney, sheriff or written designee of the law enforcement body in whose jurisdiction the pawnshop is located, without any need of judicial writ or other process. In the course of an examination, the Administrator or his duly authorized representative or any authorized peace officer shall have free access to the office, place of business, files, safes and vaults of such licensee, and shall have the right to make copies of any books, accounts, papers, correspondence and records insofar as they pertain to the business regulated by [the Oklahoma Pawnshop Act].... Any licensee who fails or refuses to permit the Administrator or his duly authorized representative or any authorized peace officer to examine or make copies of such books or other relevant documents shall thereby be deemed in violation of this act and such failure or refusal shall constitute grounds for the suspension or revocation of such license.
 Okla.Stat.Ann. tit. 59, § 1508(A) (footnote omitted).
 
 
 [4]
 Appellants presented an annual report compiled by Oklahoma Department of Consumer Credit. The report included the following statistics:
 1986 1987
Total Pawns Made 802,118 946,044
Total Confiscations by Law Enforcement 1,035 947
 Record, vol. 1, doc. 55, deposition exhibit 1.
 
 
 [5]
 Appellant further contends that section 1508 violates the privacy rights of his customers by authorizing an inspection of customer records and by not limiting the search to property in the pawnshop
 In general, a litigant must assert his own legal interest and cannot rest his claim to relief on the rights of third parties. United States Dep't of Labor v. Triplett, 494 U.S. 715, 110 S.Ct. 1428, 1431, 108 L.Ed.2d 701 (1990). One of the requirements for third party standing, however, is a genuine obstacle that prevents the third party from asserting his or her rights. Singleton v. Wulff, 428 U.S. 106, 115-16, 96 S.Ct. 2868, 2874-75, 49 L.Ed.2d 826 (1976); Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd., 854 F.2d 745, 748 (5th Cir.1988). Appellant does not contend that his customers are prevented from asserting their alleged deprivation of privacy of which he complains.
 
 
 [6]
 When a plaintiff's challenge is based on due process, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975)
 
 
 [7]
 Though we analyze the searches at issue under appellant's challenge to the statute for failure to restrain the discretion of law enforcement officials, the manner in which the officers carried out the statutory scheme may also render it vulnerable to a claim of necessity. Once it is discovered that a pawnshop possesses stolen property, "spot" searches are no longer necessary. Moreover, after the pawn tickets are turned over to the enforcing officer, "surprise" no longer appears to justify the necessity of a warrantless search
 
 
 [8]
 Okla.Stat.Ann. tit. 21, § 1092 states:
 Every pawnbroker or person carrying on the business of a pawnbroker, and every junk dealer, who having received any goods which have been embezzled or stolen, refuses or omits to exhibit them, upon demand, during the usual business hours, to the owner of said goods or his agent authorized to demand an inspection thereof, or any peace officer, is guilty of a felony.