Annabelle WINTERS, d/b/a Sharp's Pawn Shop, Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS, Osage County, Oklahoma; Osage County Sheriffs Department; George Wayman, individually and as Sheriff of Osage County; Allen Landsdown, individually and as Deputy Sheriff; Dale Penny, individually and as Deputy Sheriff, Defendants–Appellees.

No. 92–5055.

United States Court of Appeals, Tenth Circuit.

Sept. 2, 1993.

---

Laurence K. Donahoe, Oklahoma City, OK, for plaintiff-appellant.

David W. Lee, Oklahoma City, OK, for defendants-appellees.

Before BRORBY, BARRETT, and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

Appellant, Annabelle Winters, appeals the district court's entry of summary judgment on her 42 U.S.C. § 1983 claim against the County of Osage, the Sheriff's Department, and various officers within the Sheriff's Department. Ms. Winters, who does business as Sharp's Pawn Shop (Sharp's), brought this action to recover for violations of her constitutional rights arising out of the warrantless seizure of a ring from Sharp's premises and its subsequent disposition.

## BACKGROUND

On November 9, 1988, Shelly Dean stole a men's diamond cluster ring from her uncle, George Ward. Ms. Dean pawned the ring at Sharp's for $50 that same day. On November 20, Mr. Ward reported the incident to

Deputy Sheriff Dale Penny, who subsequently commenced an investigation. Deputy Sheriff Penny filed a report and a probable cause affidavit for the arrest of Shelly Dean. Oklahoma law requires pawnshops to make available to law enforcement detailed records for every buy or pawn transaction. Okla. Stat.Ann. tit. 59, § 1515 (West Supp.1993). Upon examining these records Deputy Sheriff Allen Landsdown discovered a men's diamond cluster ring pawned by Shelly Dean at Sharp's. The magistrate judge found that on March 2, 1989, Deputy Sheriff Landsdown "went to the pawnshop for the express purpose of seizing the stolen ring."[1] Upon demand, the employees of the pawnshop procured the ring for Deputy Landsdown, who signed for its receipt.

The ring was subsequently used as evidence in the criminal proceedings against Shelly Dean. After entering a plea of no contest, Shelly Dean was ordered to pay $60 restitution ($50 she received for the pawn plus $10 interest). Appellant refused to accept the restitution check. Without conducting a hearing, the Sheriff's Department returned the ring to George Ward.

Ms. Winters filed a complaint asserting the warrantless seizure and the disposition of the ring violated her Fourteenth, Fourth, and Fifth Amendment rights. Moreover, she challenged the constitutionality of three Oklahoma statutes relating to pawnbrokers (Okla.Stat.Ann. tit. 59, §§ 1508, 1515 (West Supp.1993) and Okla.Stat.Ann. tit. 21, § 1092 (West 1989)). The magistrate judge filed a report and recommendation which was adopted in full by the district court. The report concluded Ms. Winters suffered no abrogation of her constitutional rights, up-held the Oklahoma statutes as constitutional, and recommended the entry of summary judgment on behalf of the defendants.

A liberal reading of appellant's brief reveals that she challenges three issues on appeal. First, appellant challenges the constitutionality of the aforementioned Oklahoma statutes. Second, appellant contends the warrantless seizure of the ring violated Sharp's Fourth Amendment rights. Third, appellant argues the ultimate disposition of the ring violated Sharp's rights guaranteed by the Due Process Clause.

We review the district court's granting of summary judgment de novo. *Eaton v. Jarvis Products Corp.*, 965 F.2d 922, 925 (10th Cir.1992). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Upon review, we do not find all appellees are entitled to judgment as a matter of law on the second and third grounds for appeal.

## CONSTITUTIONALITY OF OKLAHOMA STATUTES

By establishing the Oklahoma Pawnbroker Act, Okla.Stat.Ann. tit. 59, § 1501 et seq., the state established a comprehensive scheme to regulate licensing of pawnbrokers, monitor pawn transactions, and control usury rates charged by pawnshops. Appellant contends the procedures mandated by Okla.Stat.Ann. tit. 59, § 1508 and § 1515 are unconstitutional.[2] Section 1508 allows the books, records, and property of licensed pawnbrokers to be examined without a warrant.[3] Section 1515

---

1. Deputy Landsdown contends he went to the pawnshop to examine records pursuant to another burglary when he was telephoned by Officer Penny and advised to seize the ring.

2. Initially, appellant also challenged the constitutionality of Okla.Stat.Ann. tit. 21, § 1092, a criminal statute which charges pawnbrokers who refuse to exhibit stolen goods to a peace officer with a felony. In *S & S Pawn Shop, Inc. v. City of Del City*, 947 F.2d 432, 441–42 (10th Cir. 1991), we held that although the pawnshop owner was not charged with a felony, he had standing to challenge the Constitutionality of the statute. We concluded, however, to abstain from determining the constitutionality of that statute. *Id.* at 442. Presently, we adhere to our decision in *S & S Pawn* to abstain from addressing the constitutionality of the Oklahoma statute.

3. Section 1508 was amended effective September 1, 1992, but changes to § 1508(A) were minimal. Prior to the amendment, § 1508(A) read in pertinent part:

> At such times as the Administrator [of Consumer Affairs] may deem necessary, the Administrator or his duly authorized representative may make an examination of the place of business of each licensee and may inquire into

lists the facts which must be included in the pawnbroker's report of all buy or pawn transactions, such as the identification of the customer and the description of the item being pawned or sold. This court previously upheld the constitutionality of the Oklahoma Pawnbroker Act. *S & S Pawn*, 947 F.2d at 436–440.

In *S & S Pawn*, the constitutionality of § 1508 was challenged for overbreadth and vagueness. In upholding § 1508 as constitutional, the court noted "warrantless administrative searches may be reasonable within the meaning of the fourth amendment when the premises are used in a closely regulated business or industry." *Id.* at 436. For a warrantless inspection in a closely regulated industry to be reasonable it must satisfy three criteria enunciated in *New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987); (1) there must be a substantial government interest; (2) "warrantless inspections must be 'necessary to further [the] regulatory scheme'"; and (3) the inspection program must provide a "'constitutionally adequate substitute for a warrant.'" *Id.* (citation omitted). The court in *S & S Pawn* performed a detailed analysis of the Oklahoma statute in relation to the *Burger* criteria. *S & S Pawn*, 947 F.2d at 436–39. The court concluded the statute on its face adequately protects Fourth Amendment rights and is not overbroad or vague. Moreover, the court determined the reporting requirements of § 1515 are constitutional, as "all [the] information pawnbrokers are required to record is potentially relevant to an investigation of stolen property by law enforcement officials." *Id.* at 438. Turning to the case at bar, Sharp's argues the Oklahoma statute does not provide a constitutionally adequate substitute for a warrant, and fails to channel the discretion of the officers. We remain steadfast to our decision in *S & S Pawn* which

addressed these same concerns and upheld the statute as constitutional.

The appellant in the present case also challenges the validity of the statute on different grounds. First, the appellant contends the Oklahoma Pawnbroker Act violates the privacy provisions of 5 U.S.C.A. § 552a (West 1977 & Supp.1993) and 12 U.S.C.A. § 3401 et seq. (West 1989 & Supp.1993). Second, appellant argues the statute violates the Due Process and Equal Protection clauses of the Fourteenth Amendment. Both of these contentions lack merit.

The provisions in 5 U.S.C.A. § 552a govern the conditions of disclosure of personal records by a federal agency. Information disclosed which does not originate from federal agency records enjoys no protection under § 552a(b). *See Thomas v. United States Dept. of Energy*, 719 F.2d 342, 345 (10th Cir.1983). Title 5 U.S.C.A. § 552a has no relevance to mandatory state disclosures required of pawnbrokers under the Oklahoma Pawnbroker Act. Similarly, pawnbrokers fall outside of the confidentiality protections of the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. Although § 3403 forbids a financial institution from disclosing a customer's financial records, a pawnshop is not considered a financial institution under the definition. Section 3401 provides: "'financial institution' means any office of a bank, savings bank, card issuer as defined in section 1602(n) of Title 15, industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution." Thus, pawnbrokers fall outside the scope of this Act as Congress did not intend for pawnbrokers or their customers to be afforded the protections given to financial institutions.

Appellant asserts the reporting requirements imposed on pawnbrokers as compared to the confidentiality protections banks

---

and examine the transactions, books, accounts, papers, correspondence and records of such licensee insofar as they pertain to the business regulated by this act. Such books, accounts, papers, correspondence, records and property taken, purchased or received shall also be open for inspection at any reasonable time to federal

law enforcement officials and the chief of police, district attorney, sheriff, or written designee of the law enforcement body in whose jurisdiction the pawnshop is located, without any need of judicial writ or other process. (Footnote omitted.)

enjoy violate the Due Process and Equal Protection clauses as there is no rational basis for disparate treatment. Appellant contends the amount of criminal activity occurring at pawnshops is indistinguishable from that occurring at banks. Economic regulations governing financial institutions violate the Equal Protection clause only if no rational basis supports the regulation. *Otero Savings & Loan Ass'n. v. Federal Home Loan Bank Bd.*, 665 F.2d 279 (10th Cir.1981). We previously held the regulation of pawnshops is a substantial government interest as they provide a market for stolen property. *S & S Pawn*, 947 F.2d at 436–37. Therefore, it is certainly rational for Oklahoma to impose greater disclosure requirements on pawnshops than on banks. As a result, we continue to uphold the facial constitutionality of the Oklahoma Pawnbroker Act.

## PROPRIETY OF THE SEIZURE

The Fourth Amendment made applicable to the States by the Fourteenth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. *Soldal v. Cook County*, —— U.S. ——, ——, 113 S.Ct. 538, 540, 121 L.Ed.2d 450 (1992). "A plaintiff may bring suit under § 1983 for state officials' violation of his ... freedom from unreasonable searches and seizures." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Appellant brings this § 1983 claim contending the officers' seizure of the ring was unconstitutional. Appellant argues the officers' sole intention upon entering the pawnshop was to seize the ring, and therefore the warrantless seizure was a Fourth Amendment violation. Appellees counter that once the officers were lawfully on the premises of the pawnshop under the statute, the seizure of the ring was justifiable under the plain view doctrine. The magistrate judge made the following determinations: "the officers were lawfully in the pawnshop and by statute had a lawful right of access to the ring. However, there was no reason that the officers could not have obtained a war-

rant to take the ring." [4] These determinations were adopted in full by the district court. We review such legal determinations de novo.

■ A seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal*, —— U.S. at ——, 113 S.Ct. at 540 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Soldal*, —— U.S. at ——, 113 S.Ct. at 547. Fourth Amendment safeguards apply to commercial premises as well as homes. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978); *See v. Seattle*, 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). Further, an individual and his private property are fully protected by the Fourth Amendment even when the individual is not suspected of criminal activity. *Camara v. Municipal Court*, 387 U.S. 523, 530, 87 S.Ct. 1727, 1731–32, 18 L.Ed.2d 930 (1967). Sharp's had a constitutionally protected property interest in the ring. *See Wolfenbarger v. Williams*, 774 F.2d 358, 362 (10th Cir.1985), *cert. denied*, 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986) (*Wolfenbarger I*). Thus, the threshold issue is whether the officer's seizure of the ring violated the Fourth Amendment rights of the appellant.

■ Appellees suggest a two-stage analysis to justify the seizure of the ring. First, the officers were lawfully on the premises in accordance with § 1508, which authorizes peace officers to execute administrative searches to ensure compliance with the Oklahoma Pawnbroker Act. Second, once the officers were lawfully on the premises they were entitled to seize any evidence of criminal activity in plain view. Appellees rely on *Horton v. California*, 496 U.S. 128, 130, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112 (1990), for the proposition that inadvertence is not a

---

4. The magistrate judge's findings are somewhat confusing. Because he found the officers could have obtained a warrant, he determined that they

were not entitled to qualified immunity, yet he still recommended the entry of summary judgment on this claim.

necessary condition of a plain view seizure.[5] A four-part test derived from *Horton* and adopted by our circuit upholds plain view seizures if

> (1) the item is indeed in plain view; (2) the police officer is lawfully located in a place from which the item can plainly be seen; (3) the officer has a lawful right of access to the item itself; and (4) it is immediately apparent that the seized item is incriminating on its face.

*United States v. Corral,* 970 F.2d 719, 723 (10th Cir.1992); *see Horton,* 496 U.S. at 136–37, 110 S.Ct. at 2307–08. The facts of this case do not support the conclusion that the warrantless seizure was justified under the plain view doctrine.

The rationale behind the plain view doctrine allowing warrantless seizures is that once an officer is legitimately on the premises and has a lawful right of access to property which is in plain view, the seizure of such property is not an intrusion on Fourth Amendment privacy rights. *Horton,* 496 U.S. at 141, 110 S.Ct. at 2310. Although the ring may have been visible in a display case, Deputy Landsdown did not have a lawful right of access to it. Instead, he asked the pawnshop clerk to produce the ring described in the § 1515 report. Because the Deputy never saw the ring until it was provided to him by Sharp's, justifying the seizure as plain view would be a mischaracterization.

More importantly, the seizure may not be justified by asserting pretextual reasons for the officer's presence on the premises in combination with the plain view doctrine. Appellees rely on § 1508 to justify Deputy Landsdown's presence. The language of § 1508 specifically allows for administrative examinations "of the place of business of each licensee and ... [inquiry] into ... the transactions, books, accounts, papers, correspondence and records of such licensee insofar as they pertain to the business regulated" by this act. In accordance with the Fourth Amendment, § 1508 does not permit the officer to seize any evidence, but merely examine it. On the day of the seizure, the record reflects Deputy Landsdown entered the pawnshop with the sole purpose of seizing the ring.[6] If we were to allow an officer under the guise of the administrative statute to seize evidence of criminal activity without a warrant when the officer has a particularized suspicion regarding that evidence, we would eradicate the Fourth Amendment protections enjoyed by the pawnshop.

■ Although we upheld the constitutionality of the Oklahoma statutes in *S & S Pawn,* we cautioned that the execution of an administrative search pursuant to direct criminal suspicion raises grave constitutional concerns. *S & S Pawn,* 947 F.2d at 441. We noted that the exigent circumstances allowing a warrantless administrative search evaporate when the police intend to seize particular criminal evidence. "Once it is discovered that a pawnshop possesses stolen property, 'spot' searches are no longer necessary. Moreover, after the pawn tickets are turned over to the enforcing officer, 'surprise' no longer appears to justify the necessity of a warrantless search." *Id.* at 441 n. 7. Simply put, when a law enforcement officer intends to seize a particular piece of criminal evidence from the premises of a pawnshop, the seizure may not be substantiated by relying on the pretense of an administrative search coupled with the plain view doctrine. In such a situation, the officer must obtain a warrant.[7] Thus, we reverse the district

---

**5.** *Horton* overruled the Tenth Circuit's holding in *Wolfenbarger v. Williams,* 826 F.2d 930, 934–36 (10th Cir.1987) (*Wolfenbarger II* ), requiring inadvertence for a plain view seizure to be lawful.

**6.** Deputy Landsdown contends that his presence in the pawnshop was a legitimate administrative search under § 1508 as he was investigating pursuant to an unrelated burglary. For the purposes of this analysis, however, this is not a genuine issue as to a material fact. According to his affidavit, Deputy Landsdown was advised to seize the ring after conferring with Deputy Penny on the pawnshop phone. Deputy Landsdown never had a lawful right of access to the ring. Therefore, even according to Deputy Landsdown's affidavit, the seizure of the ring was unconstitutional.

**7.** In the alternative, the defendants argue that exigent circumstances existed justifying the seizure of the ring. Because they believed the owner of the ring would attempt to retrieve it, the defendants claimed that this constituted exigent circumstances necessitating its immediate seizure. While exigent circumstances may abrogate

court and find there was a seizure in violation of Ms. Winter's Fourth Amendment rights.[8]

■ Because the doctrine of respondeat superior does not apply to actions brought under § 1983, Deputy Penny and Sheriff Wayman are not liable unless they have an affirmative link to the constitutional violations. *Kaiser v. Lief*, 874 F.2d 732, 736 (10th Cir.1989). Before a superior may be held liable under the affirmative link requirement, he must have participated or acquiesced in the constitutional deprivations. *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976). According to Officer Landsdown, Deputy Penny contacted Officer Landsdown on the pawnshop phone and advised him to seize the ring. Conversely, according to Deputy Penny, Deputy Landsdown informed him by telephone that he had discovered through examining pawn tickets that the ring was at Sharp's, and then went to Sharp's and seized the ring. Deputy Penny does not indicate that he requested Deputy Landsdown to seize the ring. Because of the conflicting accounts of the deputies, there is a genuine factual dispute in the record regarding whether Deputy Penny was affirmatively linked to the unlawful seizure. Therefore, we must remand this issue to allow the trier of fact to determine whether Deputy Penny participated or acquiesced to the seizure. On the other hand, the record indicates no affirmative link involving Sheriff Wayman in the unconstitutional seizure, and summary judgment was properly entered on his behalf in relation to the seizure claim.

■ Moreover, in order for the County and the Sheriff's Department to be liable under § 1983 the constitutional violation must be a result of a government custom or policy. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The County and Sheriff's department may also be held liable if the deputies were inadequately trained so that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The record contains no evidence that the unconstitutional seizure reflected to the Sheriff's Department or the County's policy nor does it indicate that the deputies were inadequately trained. Therefore, the entry of summary judgment in favor of the Sheriff's Department and County on the seizure claim was also appropriate. In summary, although we find the seizure was unconstitutional, we uphold the granting of summary judgment on behalf of Sheriff Wayman, the Sheriff's Department, and the County, and remand to determine whether Deputy Penny was affirmatively linked to Deputy Landsdown's unlawful seizure.

## DISPOSITION OF THE RING

Appellant's next claim focuses upon the adequacy of the process they received upon the ultimate disposition of the ring, rather than the propriety of the seizure itself. On September 28, 1989, the Sheriff's Department, without a hearing to identify the proper owner of the ring, returned the ring to George Ward. We first note the disposition must comply with the notice and hearing requirements specifically articulated in the Oklahoma statutes in effect at the time of the

the need for a warrant, no such exigencies existed in this case as the record clearly indicated that the defendants could have placed a hold on the ring until a search warrant was procured. *See Wolfenbarger II*, 826 F.2d at 936 (concluding that exigent circumstances did not support a warrantless search of a pawnshop where officers had placed a hold on items seized).

8. Appellees claim qualified immunity precludes an action for damages under § 1983 because the deputies did not violate Ms. Winter's clearly established constitutional rights. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Although *S & S Pawn* had not yet been decided prior to the

seizure, it had been clearly established for qualified immunity purposes that Sharp's had a constitutionally protected property interest in the ring. *See Wolfenbarger II*, 826 F.2d at 932–34. Moreover, although § 1508 allows peace officers to enter the premises of a pawnshop to search the business records of the shop, it was well established at the time of the search that a pretextual administrative search could not validate a plain view seizure. *See Burger*, 482 U.S. at 716–17 n. 27, 107 S.Ct. at 2651–52 n. 27. Since we conclude the warrantless seizure violated clearly established law, we hold that the Deputies do not enjoy qualified immunity.

disposition addressing the return of stolen property. Okla.Stat.Ann. tit. 22, § 1321 (West 1986, as amended by Laws 1987, c. 174, § 3, and Laws 1988, c. 178 § 1),[9] and § 1322 (West 1986, as amended by Laws 1988, c. 178, § 2).[10] Second, such action must conform with the protections provided by the Due Process Clause, "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). Indeed, the magistrate judge found the disposition of the ring did not afford the pawnshop due process. The magistrate judge, however, also found the deprivation of due process was moot because the pawnshop admitted at the hearing on motions for summary judgment the ring was properly given to its true owner. Actually, the pawnshop only acknowledged they had no evidence to dispute that Mr. Ward was the true owner. Appellees contend the pawnshop has no cause of action under § 1983 since Sharp's can make no claim of ownership and was fully compensated for the loss.

▮▮▮▮ Upon returning the ring to Mr. Ward, the Sheriff's Department ignored the procedural guarantees ensured by the Due Process Clause. *See Zinermon*, 494 U.S. at 125, 110 S.Ct. at 983. We previously held that pawnshops have a constitutionally protected property interest in items being held for pawn. *Wolfenbarger I*, 774 F.2d at 362. The Due Process Clause requires at a minimum that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). Appellant must be given the opportunity to present her case for ownership on the merits regardless of the likelihood for success.[11] Thus, the fundamental issue is not who is the true owner of the ring, but whether the Sheriff's Department, in disposing of the ring, afforded the appellant adequate procedural due process through notice and hearing. The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures. *Zinermon*, 494 U.S. at 126, 110 S.Ct. at 983–84.

In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the plaintiffs were precluded from asserting a due process § 1983 claim because the State had provided a meaningful post-deprivation remedy. Appellees contend that an adequate post-deprivation remedy exists in Okla.Stat.Ann. tit. 22,

9. Effective November 1, 1988 § 1321(C) read as follows:

When property alleged to have been stolen or embezzled, comes into the custody of a peace officer, he shall hold it subject to the order of the magistrate authorized by Section 1322 of this title to direct the disposal thereof. Within fifteen (15) days of the time the owner of such property is known, the peace officer shall notify the owner of such property that the property is in the custody of the peace officer.... The owner of the property or designated representative of the owner may make application to the magistrate for the return of the property.... The applicant shall notify the last person in possession of such property prior to such property being seized by the state of the hearing.... The applicant shall notify the district attorney and the court when notice has been served to the last person in possession of such property or published pursuant to this section. The hearing shall be held not less than ten (10) days or more than twenty (20) days after the court has been notified that the notice has been served or published.

10. After the 1988 amendments § 1322 read in pertinent part:

On satisfactory proof of title to the property, the magistrate before whom the information is laid, or who examines the charge against the person accused of stealing or embezzling the property, may order it to be delivered to the owner on his paying the reasonable and necessary expenses incurred in its preservation, to be certified by the magistrate. The order entitles the owner to demand and receive the property.

11. Of course, a party may waive the right to a due process hearing as was noted by the addition of Okla.Stat.Ann. tit. 22 § 1321(F) in the 1992 Amendments (c. 83, § 1) which states, "The notice and hearing provisions of subsections C and E of this section shall not be required for return of the property specified in said subsections if there is no dispute concerning the ownership of the property and the property is readily identifiable by the owner."

§ 991a–3.[12] The Supreme Court in *Parratt* and *Hudson* clarified that an adequate post-deprivation remedy relieves due process concerns only for random and unauthorized deprivations of property. *Parratt*, 451 U.S. at 541–44, 101 S.Ct. at 1916–17; *Hudson*, 468 U.S. at 531–33, 104 S.Ct. at 3202–04. The Court reasoned that when such an act is random and unauthorized "the State cannot predict precisely when the loss will occur," thus "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916. In *Hudson*, the Court emphasized "[t]he controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Hudson*, 468 U.S. at 534, 104 S.Ct. at 3204. In both *Hudson* and *Parratt*, the Court determined that no such opportunity for a predeprivation hearing was present and declared the postdeprivation remedies adequate.

In the case at bar, the Sheriff's Department ignored the predeprivation procedures provided by the legislature in Okla.Stat.Ann. tit. 22, §§ 1321–1322. We previously addressed the applicability of *Hudson* and *Parratt* to the disposition of stolen property by the local government in violation of due process in *Wolfenbarger I*. In *Wolfenbarger I* we held such a deprivation of property was not random or unauthorized, as "[t]he existence of sections 1321 and 1322 belie any suggestion that the state has or recognizes any need for such swift or expedited action, once the police have secured the property." *Wolfenbarger I*, 774 F.2d at 364. The importance of following established due process procedures is fundamental:

"The requirements of the due process clauses are directed specifically to the federal and state governments. They require the promulgation of laws and regulations providing for regular procedures which the government must follow before it may deprive an individual of life, liberty or property. The execution of those laws and

regulations also must conform to due process; otherwise the due process clause, with its guarantees of regular and predictable procedures, becomes a cipher. It is beyond cavil that due process requires more than the mere promulgation of laws and regulations which, if followed, would preserve the most fundamental of rights."

*Id.* (emphasis omitted) (quoting *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986)). Oklahoma has established safeguards to assure compliance with due process through §§ 1321 and 1322. The Osage Sheriff's Department cannot ignore these requirements and then contend the appellant has suffered no due process violation since there is an adequate postdeprivation remedy. Available postdeprivation procedures are insufficient to neutralize a due process violation when the action is planned and authorized. *Lavicky v. Burnett*, 758 F.2d 468, 473 (10th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986).

The Secretary of the Osage Sheriff's Department released the ring to Mr. Ward. Although the Secretary does not recall under whose authority the ring was released, the release was authorized. Because the Sheriff's Department authorized the release of the ring without adhering to the applicable procedures which would have ensured due process, the pawnshop maintains a viable § 1983 action against the Department. Appellant presents no evidence indicating that Deputy Penny, Deputy Landsdown, or Sheriff Wayman participated in or acquiesced to the improper disposition of the ring. *See Kite*, 546 F.2d at 337. Moreover, nothing in the record supports the theory that the unconstitutional disposing of the ring was County policy. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. Therefore, summary judgment was appropriately entered on behalf of the County, Sheriff Wayman, Deputy Penny, and Deputy Landsdown on this claim.

---

12. Okla.Stat.Ann. tit. 22, § 991a–3 states in part:
   A. Upon a verdict or plea of guilty or upon a plea of nolo contendere for an offense in which any property is unlawfully obtained and the property is sold, traded, bartered, pledged or

pawned, the court may order the defendant to provide restitution to the buyer, recipient or pledgee of the property for the value of any consideration paid, loaned or given for the property. . . .

858

In summary, we uphold the constitutional validity of the Oklahoma Pawnbroker Act on its face. Under the circumstances of this case, however, the seizure of the ring and its disposition were in violation of Sharp's constitutional rights guaranteed by the Fourth Amendment and Due Process Clause. Because Sharp's stated a viable § 1983 action, the entry of summary judgment on these claims was improper. We remand for further proceedings consistent with this opinion.

**AFFIRMED** in part, **REVERSED** in part and **REMANDED**.