**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Phillip BRANSON, Defendant–Appellee.**

No. 93–5398.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1993.

Decided April 8, 1994.

114

Steven H. Cook, Asst. U.S. Atty. (argued and briefed) David G. Dake, Asst. U.S. Atty., Knoxville, TN, for U.S.

Donald A. Bosch, Bosch & Silvey (argued) David J. Poss (briefed) Knoxville, TN, for Phillip Branson.

Before: JONES and SUHRHEINRICH, Circuit Judges; McKEAGUE, District Judge.*

SUHRHEINRICH, Circuit judge, delivered the opinion of the court, in which McKEAGUE, District Judge, joined. JONES, Circuit Judge (pp. 118–20), delivered a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

Pursuant to 18 U.S.C. § 3731, the United States appeals the district court's order granting defendant Branson's motion to suppress evidence seized during a warrantless search of the defendant's business premises. We review two issues on appeal: (1) whether Tenn.Code Ann. § 55–5–108 (1989), which regulates businesses that buy and sell used automobile parts, authorizes warrantless inspections of vehicles and parts; and (2) whether § 55–5–108 and the search conducted pursuant to the statute comport with the exception to the Fourth Amendment warrant requirement for administrative inspections of pervasively regulated industries as established in *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). For the following reasons, we **REVERSE** the order of the district court.

## I.

On June 17, 1992, Tennessee Motor Vehicle Investigator Danny Wright, accompanied by two other investigators, conducted an inspection of defendant Phillip Branson's auto repair shop. Defendant buys and stores au-

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

tomobile parts for use in his business. Wright advised Branson that a search warrant was not necessary because he was acting pursuant to Tenn.Code Ann. § 55-5-108 (1989). The investigators checked an open field used by the defendant in his business, then moved to an outbuilding on the property. During the course of the inspection, Wright, who had some familiarity with the premises from a past inspection, noticed that the second story of the building had been finished. Wright asked the defendant what he had upstairs and the defendant replied that he kept "old auto parts" in the attic. Wright testified that he asked for consent to look in the attic and that Branson granted permission; however, Branson refuted this statement. Branson also testified that when he asked about a search warrant, the inspectors again told him that a search warrant was not necessary to go upstairs. Behind a closed door in a second room in the attic, one of the investigators discovered marijuana.

Defendant was charged in a two-count indictment with manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B), and with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendant filed a motion to suppress, alleging that the warrantless search was illegal.[1] The district court agreed, concluding that the officers' search of defendant's attic exceeded the scope of an administrative inspection permitted by § 55-5-108(a)(3); and, that the government failed to demonstrate that the inspecting officers applied the inspection program with "certainty and regularity." *See New York v. Burger*, 482 U.S. 691, 702, 107 S.Ct. 2636, 2643-44, 96 L.Ed.2d 601 (1987). The district court then referred the matter to the magistrate for a report and recommendation on the issue of whether the good faith exception to the exclusionary rule applied. The magistrate judge determined the excep-

tion was inapplicable and the district court adopted that recommendation as well. Consequently, the seized evidence was suppressed.

## II.

The statute governing this dispute provides in relevant part as follows:

> Any person, firm or corporation engaged in the business of buying or selling of used automobile parts shall keep permanent records of transactions of buying or selling engines, transmissions, vehicle bodies.... Such records shall include from whom the item was purchased and his address and drivers license ... and shall be available to all law enforcement officers for inspection at any reasonable time during business hours without prior notice or the necessity of obtaining a search warrant.

Tenn.Code Ann. § 55-5-108(a)(1) (1989). Subdivision (a)(2) of the statute makes any person failing to keep the records guilty of a misdemeanor. Subdivision (a)(3) authorizes an inspector designated by the commissioner of revenue to inspect

> any vehicle, whether intact, wrecked, or dismantled, at an automobile dismantler's lot, salvage lot or other similar establishment required to keep records under subdivision (a)(1), within the state of Tennessee.

Subdivision (a)(4) of the statute limits inspection to regular business hours "in a manner so as to minimize interference with or delay of business operations." Tenn.Code Ann. § 55-5-108(a) (1989).

### A.

■ The district court examined the statute and concluded that it does not authorize a motor vehicle investigator to inspect vehicles and vehicle parts at a regulated business

---

1. The matter was referred to a magistrate judge for a report and recommendation. In addition to his recommendation that the motion to suppress should be granted, he concluded that the defendant's consent was not voluntary but mere acquiescence to a show of lawful authority and therefore, was not valid. *See Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The district court agreed that Branson's consent to search was not voluntary. The government challenged this ruling as well as the district court's finding that the good faith exception to the exclusionary rule did not apply; because we find the statute authorized the inspection and the statute and the search conducted pursuant thereto comported with the Fourth Amendment, we do not address these arguments.

unless he obtains a warrant. Specifically, the district court found that Wright had to first examine the defendant's records and discover some discrepancy, then seek a warrant for the search of the premises based on the discrepancy. It reached this conclusion because subdivision (a)(1) expressly states that officers may inspect records without "prior notice or the necessity of obtaining a search warrant." In contrast, subdivision (a)(3) merely authorizes inspection of any vehicle on the premises of a business required to keep records under subdivision (a)(1). There is no mention of doing so without a warrant.

We hold that the statute does authorize warrantless inspections of vehicles and parts. Were we to adopt the district court's construction of the statute, we would render § 55–5–108(a)(3) a nullity. It would authorize nothing more than that which motor vehicle inspectors can already do without a warrant—look at cars during business hours at dismantlers' establishments in those areas which are open to the public.

■ The district court's reading of the statute results in an interpretation unsustainable under rules of statutory construction. *See United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)); *Boise Cascade Corp. v. EPA,* 942 F.2d 1427, 1432 (9th Cir. 1991) (statute should not be construed in a manner that renders it meaningless). Statutes must be read as a whole and construed to give each word operative effect. *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Further, they should be interpreted to "avoid untenable distinctions and unreasonable results whenever possible." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982). The district court's reading of the statute, therefore is rejected.

In addition, the district court's interpretation forces us to read a nonexistent "discrepancy" requirement into the statute. The district court believes the statute authorizes a search of vehicles and parts only if the inspector discovers a discrepancy in the records and obtains a warrant to search based on the discrepancy. We decline to imply this requirement. Further, this forced reading pales in light of the legislative history which provides a reasonable explanation for the absence of the "without a warrant" language in § 55–5–108(a)(3). Originally enacted in 1968, § 55–5–108 (what is now subdivision (a)(1)) was amended in 1972 to broaden the record-keeping obligation. Public Acts 1972, ch. 725, § 4. Not until 1980, twelve years after the original enactment, were subdivisions (a)(3) and (a)(4) enacted in their current form. Consequently, the variation in language is unalarming, and not indicative of a distinction in legislative intent. Accordingly, we turn our attention to the second issue before us.

**B.**

■ In general, we are nonplussed by the district court's concern that, in the absence of a warrant requirement to inspect automobile parts, the statute becomes a vehicle for unconstitutional, general warrantless searches. A warrantless inspection of commercial premises may be reasonable within the meaning of the Fourth Amendment. *See New York v. Burger,* 482 U.S. 691, 702, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987). Specifically, the Supreme Court has recognized an exception to the warrant requirement for searches of "closely" or "pervasively" regulated industries, *Burger,* 482 U.S. at 702–03, 107 S.Ct. at 2643–44 (holding the exception applied to the search of an automobile junkyard), provided three criteria are met: (1) a "substantial" government interest exists "that informs the regulatory scheme pursuant to which the inspection is made"; (2) the inspection is "necessary to further the regulatory scheme"; and, (3) the statute's inspection program provides a "constitutionally adequate substitute for a warrant" in that it "advise[s] the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope" and it "limit[s] the discretion of the inspecting officers." *Id.* at 702, 107 S.Ct. at 2644 (citations omitted). Thus, under the reasoning of *Burger,* the statute acts as a

substitute for a warrant provided the specified criteria are met.

■ In this case, the parties do not dispute that the first element of the *Burger* test is met. The second element is also met because the authority to inspect automobile parts is necessary to further the regulatory scheme. If the inspector is required to first, examine the records; second, find a discrepancy; and, third, obtain a warrant to inspect the vehicles and vehicle parts, the dismantler most adept at doctoring records will evade inspection. Moreover, many discrepancies in record keeping will not be apparent until inspectors view vehicles and parts. Finally, the imposition of a warrant requirement prior to inspection of auto parts would interfere with the purpose of the statute—deterrence of theft. Flexibility and surprise are critical tools in the identification of stolen parts and the elimination of a market for these items. *See Burger,* 482 U.S. at 710, 107 S.Ct. at 2648. In *Burger,* the officers conducting the inspection proceeded even after the owner indicated that he had no records of the automobiles or vehicle parts in his possession. *Id.* at 694–95, 107 S.Ct. at 2639–40. The Supreme Court rejected the argument that a statute permitting searches of vehicles and parts in the absence of records against which the parts could be compared was unconstitutional. *Id.* at 698, 107 S.Ct. at 2641–42. Thus, the statute comports with the second element of *Burger.*

Additionally, despite the district court's finding that the infrequency and irregularity of inspections of defendant's business violated the third criteria of the *Burger* test, we hold that the statute provides a constitutionally adequate substitute for a warrant. It provides notice to businesses that buy or sell used automobile parts that inspections will be made, establishes the scope of the inspections, and limits not only who may inspect but the manner in which the inspections will be conducted.

The fact that the officers used no articulated method in deciding to inspect Branson's business does not distinguish this case from

*Burger.* In *Burger,* the Court noted that it was unclear from the record why Burger's junkyard was inspected. 482 U.S. at 694 n. 2, 107 S.Ct. at 2639 n. 2. Here, as in *Burger,* the reason for the inspection is not material.[2] Similarly, Wright's testimony that he conducted audits, on average, only one or two days per month depending on how busy he was, is nondispositive. In *Burger,* the dissenters argued, to no avail, that because there was no assurance that any inspection would occur, and no limits on the number of searches that could be conducted during a specified time period, the third element was not satisfied. *Id.* at 711 n. 21, 723–24, 107 S.Ct. at 2648 n. 21, 2654–55. *See also S & S Pawn Shop Inc. v. City of Del City,* 947 F.2d 432, 438–39 (10th Cir.1991) (rejecting argument that administrative search statute must establish the regularity with which the search will occur).

*Burger* requires only that the statute advise the owner of the commercial premises that the search is being made pursuant to the law and that it limit the discretion of the inspecting officers. This means that the statute must be "sufficiently comprehensive" so that a commercial property owner "cannot help but be aware that his property will be subject to periodic inspection undertaken for specific purposes." *Burger,* 482 U.S. at 703, 107 S.Ct. at 2644 (citations omitted). Although limitations on the number of searches is a factor in the analysis, it is not dispositive unless the statute, as a whole, inadequately limits the inspector's discretion. *Id.* at 712, n. 22, 107 S.Ct. at 2648 n. 22. This statute meets the standard.

Here, the statute notifies all persons or business entities that buy or sell used auto parts that inspections are authorized. Tenn. Code Ann. § 55–5–108(a)((1). The statute then incorporates limitations on the inspections, requiring that they be conducted during normal business hours, in a manner that minimizes interference, and limits their scope to records *and* vehicles *and* parts. Tenn. Code Ann. § 55–5–108(a)(1), (3), and (4). Thus, the statutory scheme does not grant

---

**2.** There is no evidence in the record to indicate that this administrative inspection was a pretext for a drug search, a fact that might require

suppression of the marijuana plants despite compliance with *Burger.*

unfettered discretion to inspectors. Nor did the inspectors exercise unfettered discretion in this case. It is undisputed that defendant bought auto parts; that the inspectors only entered buildings and areas where automobile parts were stored; and that before the inspectors entered the attic, they inquired and learned that auto parts were stored in the attic. Once the defendant admitted that the attic contained auto parts, the officers were justified in concluding that the statute authorized inspection of those auto parts as well. An attic containing auto parts is viewed no differently under the statute than a garage containing auto parts. Their inspection fell within the limits established by the statute.

Because the statute authorizes warrantless searches of auto parts and comports with *Burger*, it acts as an exception to the warrant requirement. The inspectors only entered those areas where the defendant stored auto parts and they were lawfully in the attic when they discovered the marijuana plants. Accordingly, we **REVERSE** the order of the district court suppressing the evidence seized and **REMAND** this case for additional proceedings.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Three investigators arrived unannounced at Phillip Branson's auto lot and examined car parts in an open field. Finished, they entered a work building, went up into an attic, opened a door to an adjoining room, and found some marijuana. In the majority's view, such a warrantless search was authorized by Tennessee Code § 55–5–108(a)(3) and permitted by the "administrative inspection" exception to the Fourth Amendment's warrant requirement. In my view, neither is the case. Accordingly, I respectfully dissent.[1]

I

Section 55–5–108(a)(3) authorizes investigators to "inspect any vehicle, whether in-

tact, wrecked, or dismantled, at an automobile dismantler's lot, salvage lot or other similar establishment required to keep records under subdivision (a)(1), within the state of Tennessee." By its terms, the provision authorizes the inspection or examination of auto parts, but it says nothing to limit the physical scope of a search of a shop's premises in inspecting those parts.

Despite the statute's silence in this regard, the majority appears to hold that Tennessee investigators have *carte blanche* to enter and search any building or room where parts are located. Under the majority's reading, the statute renders irrelevant a shop owner's consent to a search of a private room or the owner's ability to bring the parts in it to the investigators. The majority believes that the statute permits entry and search of that room, at least when the shop owner acknowledges that there are some parts there. The opinion stops short of addressing whether the statute authorizes investigators to search a room that they believe contains parts, but which the shop owner says does not contain any.

My reading of the statute differs. Given the established presumption against warrantless searches, we should not construe a statute to authorize any more of a search than the minimum that its language requires. This Tennessee statute thus does not, as the district court put it, allow officers "to roam at will over the defendant's premises and to engage in a search of areas that were not clearly open to the public." J.A. at 42. Rather, it allows them to "inspect" vehicles and their parts. This of course means that investigators can examine auto parts in plain view, or in areas of the shop that are open to the public, such as the field where these investigators began their inspection. However, in the event that a shop owner has parts in a private room, such as the few parts that Branson had in temporary storage in his attic, the owner must at the least be allowed to present the parts for inspection while

---

1. My conclusion accords with both the Eastern District of Tennessee, which suppressed the evidence in this case, and the Middle District of Tennessee, which has held § 55–5–108 unconstitutional. *See United States v. Proffitt*, No. 2:93–00014 (M.D.Tenn. Jan. 10, 1994).

maintaining the privacy of his room.[2] As it appears that it is not unusual for auto shop owners to have their home and business at the same location, it is all the more important in the interest of personal privacy that we not construe the statute any more broadly than the Tennessee legislature has drafted it. Yet, that is what the majority does here. It construes the statute to authorize physical searches much more extensive than necessary to "inspect" parts.

I therefore conclude that the investigators exceeded their statutory authority to the extent that they searched private areas of Branson's business premises.[3]

## II

If I were to assume that the majority has read the statute correctly, its reading would compel me to conclude that the statute is unconstitutional. The majority believes the statute authorizes investigators to enter and search any room containing parts in an auto shop. So glossed, the statute does not fit under the "administrative inspection" exception to the Fourth Amendment's warrant requirement. That deviation from the general requirement that warrantless searches are *per se* violations of the Constitution was most recently explicated in *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

*Burger* recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises as well as private homes, for a business operator has a reasonable expectation of privacy on his premises. *Id.* at 699, 107 S.Ct. at 2642. However, that expectation, the Court said, is attenuated for owners

of pervasively regulated industries that have a long tradition of close government supervision. *Id.* at 700, 107 S.Ct. at 2642. Where the expectation of privacy is weakened and the government interest in regulation is heightened, certain warrantless inspections can be reasonable, if a statute authorizes those inspections and meets the following three requirements:

> First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made.
>
> *     *     *     *     *     *
>
> Second, the warrantless inspections must be necessary to further the regulatory scheme.
>
> *     *     *     *     *     *
>
> Finally, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*Id.* at 702–03, 107 S.Ct. at 2644 (citations and quotations omitted).

Only the third requirement is at issue here. In my view, if this statute is read to authorize general searches of auto shop premises, it has not provided for a constitutionally adequate substitute for a warrant. Namely, the statute does not limit the officers' discretion by providing any standard for determining which portions of the premises they may search, nor does it provide notice that such wide-ranging searches will occur.

---

**2.** In the same vein, the fact that § 55–5–108(a)(1) requires shop owners to make "available" all the required records of their transactions does not authorize a search of any room or area where those records are kept.

**3.** Such a search would of course be permissible, regardless of the statute, if Branson voluntarily consented to it. In the proceeding below, the parties disputed whether Branson consented to allow the investigators to ascend to his attic. However, Officer Wright testified that he would have inspected the attic regardless of whether Branson gave his consent, and as the district

court found, the investigators "asserted their lawful authority to conduct the inspection from the moment that they arrived on the defendant's premises. Nothing the defendant could have done, short of violent resistance, could have prevented the officers from entering the attic area." J.A. at 46. Even if Branson did not resist the officers, voluntary consent cannot be demonstrated by "showing no more than acquiescence to a claim of lawful authority," *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968).

Though *Burger* upheld a similar New York auto shop inspection statute, the Court did not consider a search as wide-ranging as the one at issue here. In *Burger,* investigators arrived at the defendant's auto shop and asked to see his required license and business records, which he could not produce. They then inspected vehicles in his junkyard and determined from the identification numbers that some were stolen. *Id.* at 694–95, 107 S.Ct. at 2639–40. A divided Court held that the statute permitted such an inspection, but the physical scope of the search was not at issue in the case. There is no indication that the Court would have found that the statute was a proper substitute for a warrant had the search invaded private rooms on the premises. Like the Tennessee statute here, the New York statute gave no indication that officers could go anywhere on the premises where parts were kept. *See id.* at 694 n. 1, 107 S.Ct. at 2639 n. 1. Due to *Burger*'s requirement that a regulatory search statute provide a constitutionally adequate substitute for a warrant, I think that such a search would have been found unconstitutional in that case and thus must be found unconstitutional here.

### III

Finally, I must observe that even if I were to accept both the majority's expansive reading of the statute and the constitutionality of that reading, I still could not find that the officers' search of the final closed room in Branson's attic was permissible. The officers opened the door to that room without even asking whether auto parts were inside, and in fact the record fails to indicate that any parts were there. That room, however, is where the searching officers found some marijuana. In my view, today's opinion disregards this important fact, even as it holds that the statute and the Constitution permitted the officers to enter the attic in the first place.

For the above reasons, I would grant Branson's motion to suppress the evidence.