43 F.3d 1473
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Orlen Vick PROFFITT, Defendant-Appellee,
State of Tennessee, Intervenor-Appellant.
 Nos. 94-5198, 94-5424.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1994.
 
 Before: MILBURN and SUHRHEINRICH, Circuit Judges; and JOINER*, District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Pursuant to 18 U.S.C. Sec. 3731, the United States of America (No. 94-5198), appeals the district court's order granting the motion of defendant Orlen Vick Proffitt to suppress evidence seized from his property on June 11, 1992, following a warrantless administrative search conducted pursuant to Tennessee Code Annotated ("Tenn.Code Ann.") Sec. 55-5-108. Intervenor, the State of Tennessee (No. 94-5424), appeals the district court's order denying its motion to intervene in this action pursuant to 28 U.S.C. Sec. 2403(b), concerning the question of the constitutionality of Tenn.Code Ann. Sec. 55-5-108(a)(3). On appeal, the issues are (1) whether Tenn.Code Ann. Sec. 55-5-108 is constitutional and whether the actions of Tennessee agents in performing a warrantless administrative search pursuant to the statute were lawful; (2) whether, if it should be determined that Tenn.Code Ann. Sec. 55-5-108 is unconstitutional, the actions of the Tennessee agents are lawful since they acted in good faith reliance on a state statute; and (3) whether the observation of the stolen truck on defendant's property by the Tennessee agents, falls within the open fields exception to the Fourth Amendment. For the reasons that follow, we reverse.
 
 I.
 A.
 
 2
 Defendant Orlen Vick Proffitt was engaged in the business of buying and selling used automobile parts. He was licensed by the State of Tennessee to do business as a used automobile dealer under the name of East End Equipment Company.
 
 
 3
 As part of his business, defendant purchased wrecked vehicles, primarily trucks, and rebuilt them for resale using used automobile parts obtained from salvage yards and other suppliers. Defendant presented several of these rebuilt vehicles for inspection by state inspectors, including Inspector Tommy Calahan of the Tennessee Department of Safety.
 
 
 4
 As an inspector for the Tennessee Department of Safety, Calahan was authorized to conduct regulatory inspections and audits of the records and inventory of licensed auto parts dealers for the state. Defendant's business was included in the district in which Inspector Calahan had been assigned to perform inspections on behalf of the State of Tennessee, and Inspector Calahan determined that he would perform an audit and inspection of defendant's records and inventory as authorized by Tenn.Code Ann. Sec. 55-5-108. In preparation for this audit and inventory, Inspector Calahan requested records of transactions in which defendant had purchased used and salvage automobile parts from automobile salvage yards located in Nashville and Chattanooga, Tennessee.
 
 
 5
 Thereafter, on June 9, 1992, a used car dealer, Marlow Motor Company, in Crossville, Tennessee, notified Inspector Calahan that a woman had identified one of the used automobiles on his lot as the automobile that had been stolen from her about three years earlier. The woman was able to locate several points of identification on the body of the car. Inspector Calahan inspected the automobile, but he was unable to immediately identify the car through the use of the vehicle identification number ("VIN"). Inspector Calahan then spoke with the individual who had sold the allegedly stolen vehicle to the used car lot and determined that the individual had purchased the vehicle about a year earlier from defendant. Inspector Calahan then decided that he would perform an audit and inspection of defendant's records and inventory the following day.
 
 
 6
 Inspector Calahan sought the assistance of other agents from the Tennessee Department of Safety to assist in the audit and inspection of defendant's business. The audit and inspection was to involve the inspection of defendant's business records, vehicles, and vehicle parts.
 
 
 7
 On June 11, 1992, Inspector Calahan met with Inspectors McGaughy and Hester of the Tennessee Department of Safety, and with Trooper Smith of the Tennessee Highway Patrol. To reach defendant's business, the agents turned off a paved highway and drove along a long gravel driveway which leads to defendant's house and place of business. A brick garage was located adjacent and to the left side of the house. The gravel driveway splits just before arriving at the house, with one drive extending to the house and the other leading to the brick garage shop and a metal building located behind the brick garage. Across the gravel driveway from the brick garage and metal building was a wooded area. Located along the driveway, on the same side as the wooded area, were numerous parts from motor vehicles. In addition, various motor vehicles and motor vehicle parts were strewn throughout the premises.
 
 
 8
 Defendant came out of his house and, while standing in front of the brick garage, spoke with the agents. Inspector Calahan informed defendant that the agents were there to perform a warrantless audit and inspection of his business, the business records, the vehicles and the automobile parts. Defendant insisted that they could not perform the audit unless they had a search warrant.
 
 
 9
 After some discussion between defendant and Inspector Calahan, Inspector Calahan walked over to his car and obtained volume ten of Tennessee Code Annotated to show defendant the section of Tenn.Code Ann., Sec. 55-5-108, that authorized warrantless audits and inspections. As defendant and Inspector Calahan began to argue as to whether the agents had the right to conduct a warrantless audit and inspection, Trooper Smith wandered away from the group of agents in order to smoke a cigarette. As Trooper Smith walked away, defendant yelled to Smith that he was to go no further because defendant had not given permission for any search to be conducted.
 
 
 10
 While defendant and Inspector Calahan continued their argument, Inspectors McGaughy and Hester walked along the gravel driveway that ran beside the brick garage and metal building in order to "kill time." From the gravel driveway, Inspectors McGaughy and Hester observed several vehicles, some of which had been either wrecked or disassembled, located between the brick garage and the metal building. As they stood on the driveway, Inspectors McGaughy and Hester also noticed that one of the vehicles appeared to be a new General Motors truck with Georgia license plates.
 
 
 11
 Inspector Hester thought that it was unusual for a truck in good condition and with Georgia license plates to be in that location. Inspector Hester also noticed similar vehicles located near the late-model truck with Georgia license plates. This made Inspector Hester suspicious because it was a common practice for car thieves to take the VIN plates from wrecked vehicles and place them on stolen vehicles that were similar in appearance to the wrecked vehicles.
 
 
 12
 Inspectors Hester and McGaughy then left the gravel driveway and walked over to the new truck with Georgia license plates. They looked through one of the windows of the truck and observed that the left side of the steering column had been broken out. Based upon their experience, Inspectors Hester and McGaughy knew that this was a common technique used to start stolen vehicles.
 
 
 13
 They read the VIN number of the truck through the windshield and Inspector McGaughy wrote the VIN number on the palm of her hand. Inspector McGaughy then went to their vehicle, radioed the VIN number to the local highway patrol dispatcher, and learned that the truck had been reported as having been stolen.
 
 
 14
 Once the agents learned that the truck had been stolen, Inspector Hester informed Inspector Calahan. Defendant was then placed under arrest and was taken to the Cumberland County (Tennessee) Criminal Justice Center to be booked. Thereafter, Inspector Calahan obtained a search warrant for defendant's place of business, based, in part, on the discovery of the stolen truck. During the execution of the search warrant, approximately 20 stolen vehicles, automobile parts with serial identification numbers, and firearms were found in the brick garage, the metal building, and on the surrounding grounds.
 
 B.
 
 15
 On September 15, 1993, a federal grand jury issued an eleven-count indictment charging defendant with various offenses. Counts One through Four of the indictment charged defendant with unlawfully possessing stolen motor vehicles which had crossed state boundaries after being stolen in violation of 18 U.S.C. Sec. 2313. Counts Five through Eight charged defendant with possession of motor vehicle parts from which the VIN numbers had been unlawfully removed in violation of 18 U.S.C. Sec. 2321. Count Nine charged defendant with being a felon in possession of various firearms in violation of 18 U.S.C. Sec. 922(g). Count Ten charged defendant with unlawful possession of a machinegun in violation of 18 U.S.C. Sec. 922(o), and Count Eleven charged defendant with possession of a firearm on which the serial number had been altered in violation of 26 U.S.C. Sec. 5861(h).
 
 
 16
 On November 1, 1993, defendant filed a motion to suppress certain evidence seized from him as well as statements made by him following his arrest and the search of his property on June 11, 1992. An evidentiary hearing was held on defendant's motion to suppress on November 29, 1993. Subsequently, on January 6, 1994, the district court issued a memorandum and order granting defendant's motion to suppress. Thereafter, on January 13, 1994, the district court entered a supplemental memorandum which supplanted its original memorandum granting the motion to suppress, holding that "Sec. 55-5-108(a)(3) unconstitutionally authorizes searches for the purpose of discovering penal violations unrelated to the enforcement of the regulatory scheme." The district court went on to state, "[i]n effect, it dispenses with the necessity of a search warrant under the guise of an administrative inspection." J.A. 56.
 
 
 17
 On February 4, 1994, the State of Tennessee filed a motion and supporting memorandum seeking to intervene in this action in order to argue that Tenn.Code Ann. Sec. 55-5-108 is constitutional. On that same day, February 4, 1994, the United States of America filed a timely notice of appeal from the district court's order granting the motion to suppress (Case No. 94-5198).
 
 
 18
 Thereafter, on February 23, 1994, the district court denied the motion of the State of Tennessee to intervene in this action.[1] On March 25, 1994, the State of Tennessee filed a timely notice of appeal from the district court's order denying its motion to intervene (Case No. 94-5424).
 
 II.
 A.
 
 19
 In his brief on appeal, defendant admits that a "panel of this Circuit, ... held that Tenn.Code Ann. Sec. 55-5-108 met all three prongs of the test set out by the Supreme Court in New York v. Burger, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). United States v. Branson, 21 F.3d 113 (6th Cir.1994)." Brief of Appellee at 10. However, defendant "respectfully requests this Court to reconsider this decision, and uphold the finding of the district court that the statute is unconstitutional." Id. Nonetheless, we must decline defendant's invitation to reconsider the decision in Branson. "A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." Salmi v. Secretary of Health & Human Servs, 774 F.2d 685, 689 (6th Cir.1985).
 
 B.
 
 20
 Plaintiff makes two further arguments on appeal. The first is that the district court erred in finding that the good faith exception of Illinois v. Krull, 480 U.S. 340 (1987), did not apply to this case, because the search at issue is pretextual. The second argument is that the observation of the stolen truck came within the open fields exception to the warrant requirement of the Fourth Amendment. However, we need not address these issues, because we have already found an independent basis for concluding that the district court erred in granting defendant's motion to suppress.
 
 III.
 
 21
 For the reasons stated, the district court's judgment granting defendant's motion to suppress is REVERSED, and the appeal of the State of Tennessee is DISMISSED as moot.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 We note that the State of Tennessee filed a timely notice of appeal from the district court's order denying its motion to intervene. (Case No. 94-5424). However, in its brief on appeal, the State of Tennessee has addressed only one issue; namely, the constitutionality of Tenn.Code Ann. Sec. 55-5-108. The State of Tennessee has failed to address the propriety of the district court's dismissal of its motion to intervene in its brief on appeal. See Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992)
 Furthermore, because we are required to address the issue of the constitutionality of Tenn.Code Ann. Sec. 55-5-108 as part of the appeal of the United States, and because, as discussed below, we resolve that issue favorably to the United States (and therefore the State of Tennessee as well), we shall dismiss the appeal of the State of Tennessee (Case No. 94-5424) as moot.