HELENE N. WHITE, Circuit Judge
(concurring in part, dissenting in part).
I agree with the majority that we have interlocutory jurisdiction to consider whether Detective Hall is entitled to absolute immunity as to plaintiff Rodriguez’s claim that he intentionally omitted exculpatory evidence to secure indictments, that Hall was entitled to absolute immunity, and that the claim was thus properly dismissed. I also agree that plaintiff Palmer’s claims were properly dismissed.
I respectfully dissent from the majority’s determination that the individual defendants are entitled to qualified immunity as to Rodriguez’s claims of retaliation and harassment under the First Amendment. I cannot agree with the majority that the district court’s determination that genuine issues of fact precluded summary judgment of the First Amendment retaliation and harassment claims was “blatantly and demonstrably false.”
The record supports the district court’s determination. Specifically, Rodriguez’s third amended complaint alleged that in August 2008 (after the case against him had been dismissed by the Cuyahoga County Common Pleas Court) officers in the Cleveland Police Department’s (CPD) auto theft unit visited and questioned the owner of another towing company regarding trucks Rodriguez formerly owned, and the officers told the towing company owner not to tell Rodriguez they had been there and questioned him. Rodriguez’s third amended complaint also alleged other retaliation and harassment by the CPD in the spring of 2008 and in later 2008. Defendants’ motion for summary judgment stated (as does the district court’s opinion at n. 8, R. 156 at 3) that in July 2006, the CPD’s auto theft unit consisted of four officers, three of whom are individual defendants in this case, Miller, Hall, Davis. R. 117 at 15. Defendants’ deposition testimony and affidavits establish that Hall and Davis remained in the auto theft unit in August 2008. R. 117-5, ¶ 2 (Hall sworn declaration); R. 85-1 at 6 (Davis dep.); R. 85-5 at 12-13, 25 (Miller dep.) Thus, in 2008, two of the four individual defendants were in the auto theft unit, a unit that apparently is generally comprised of four officers.
Under these circumstances, the district court’s determination that genuine issues of material fact remained regarding the individual defendants’ involvement in the alleged retaliation and harassment during 2008 was not “palpably and demonstrably false.”
Nor do I agree that the individual defendants are entitled to qualified immunity as to Rodriguez’s malicious prosecution and continued unlawful detention without probable cause under the Fourth Amendment. Because the district court properly determined that genuine issues of material fact precluded granting summary judgment on these claims, this court cannot, on interlocutory appeal, review those determinations. Johnson v. Jones, 515 U.S. 304, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (holding that “a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court’s summary judgment order insofar as that order deter *460 mines whether or not the pretrial record sets forth a ‘genuine’ issue of fact for trial”), Bomar v. City of Pontiac, 643 F.3d 458, 461 (6th Cir.2011) (citing Johnson, 515 U.S. at 317, 115 S.Ct. 2151.)
I also respectfully dissent from the majority’s determination that the individual defendants are entitled to qualified immunity on Rodriguez’s claims of unreasonable search and seizure under the Fourth Amendment (Count I), and would affirm the district court’s grant of his motion for partial summary judgment, as explained below.
Finally, given that there was an underlying constitutional violation of Rodriguez’s rights, I respectfully dissent from the majority’s determination that defendants City of Cleveland and Police Chief McGrath are entitled to summary judgment as to Rodriguez’s claim of municipal liability, i.e., that defendant City, or the Cleveland Police Department, headed by defendant McGrath, had a well-established custom or practice of using administrative inspections of regulated businesses as a pretext or guise to gather evidence of criminal activity without obtaining a warrant, and the related claims of failure to train, investigate and discipline. The district court properly determined that genuine issues of fact precluded summary judgment of these claims.
I
Warrantless inspections of commercial sites that are part of a pervasively regulated industry may be constitutionally permissible if they meet the three-prong test of New York v. Burger, 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987):
Because the owner or operator of commercial premises in a “closely regulated” industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application in this context.... [W]e conclude that, as in other situations of special need, where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment.
This warrantless inspection, however, even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a “substantial” government interest that informs the regulatory scheme pursuant to which the inspection is made.... Second, the warrantless inspections must be necessary to further the regulatory scheme.... Finally, the statute’s inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.
482 U.S. at 702, 107 S.Ct. 2636 (citations and quotations omitted, emphasis added). See also United States v. Branson, 21 F.3d 113, 116 (6th Cir.1994) (citing Burger, 482 U.S. at 702, 107 S.Ct. 2636).
In upholding the constitutionality of a warrantless administrative inspection of an automobile junkyard business, the Burger Court observed that it was undisputed that the inspection was made solely pursuant to the administrative regulation and that the inspection did not appear to be a pretext *461 for obtaining evidence of criminal wrongdoing:
The legislative history of [the administrative inspection regulation] ... reveals that the New York Legislature had proper regulatory purposes for enacting the administrative scheme and was not using it as a “pretext” to enable law enforcement authorities to gather evidence of penal violations.... There is, furthermore, no reason to believe that the instant inspection was actually a “pretext” for obtaining evidence of respondent’s violation of the penal laws. It is undisputed that the inspection was made solely pursuant to the administrative scheme.
Burger, 482 U.S. at 716 n. 27, 107 S.Ct. 2636 (emphasis added). Burger makes clear beyond peradventure that “[t]he discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal.” Anobile v. Pelligrino, 303 F.3d 107, 122 (2d Cir.2002) (quoting Burger, 482 U.S. at 716, 107 S.Ct. 2636) (emphasis added). See also United States v. Johnson, 408 F.3d 1313, 1321 (10th Cir.2005), cert. denied, 546 U.S. 951, 126 S.Ct. 458, 163 L.Ed.2d 348 (2005) (noting that Burger “did not endorse a scheme that would allow a warrantless search based on recently discovered evidence that criminal activity had occurred,” and that inspections of business premises “conducted not as part of a pre-planned and dispassionate administrative procedure but instead pursuant to direct criminal suspicion give cause for grave constitutional concern.”) (citations and internal quotations omitted, emphasis added).
A
I cannot agree with the majority that the individual defendants’ administrative search fell within the confines of the Fourth Amendment. The majority overlooks that Burger and its progeny make clear that where, as in the instant case, officials conduct an administrative inspection based solely on their direct criminal suspicion, the search is invalid from its inception. The cases the majority relies neither overrule nor contravene this longstanding proposition.
United States v. Villamonte-Marquez, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), on which the majority relies to support its determination that “defendants’ pre-search suspicion that Rodriguez possessed a stolen dump truck”[29] did not render their warrantless administrative search invalid, is distinguishable from the instant case because it did not involve an administrative inspection prompted solely by direct criminal suspicion of criminal wrongdoing.
In Villamonte-Marquez, customs officers and Louisiana state policemen were patrolling a ship channel, apparently at least in part because of a tip that a vessel in the channel was carrying marijuana. 462 U.S. at 582, 584 n. 3, 103 S.Ct. 2573. The officers sighted an anchored 40-foot sailboat in the channel, and approached it after witnessing it rock violently in the wake of a passing large freighter. Id. at 582, 103 S.Ct. 2573. The officers twice asked the lone man on deck if the sailboat and crew were all right, and the man unresponsively shrugged his shoulders. Pursuant to Customs laws permitting suspicionless boarding of vessels to examine the manifest and other documents, the officers boarded the sailboat and asked to see the vessel’s documentation. Id. at 583-85, 103 S.Ct. 2573. While examining the document, an officer smelled what he thought to be burning marijuana and observed bur *462 lap-wrapped bales through an open hatch. Villamonte-Marquez was laying atop the bales on a sleeping bag. The officer arrested both the man on deck and Villamonte-Marquez, and a subsequent search revealed thousands of pounds of marijuana, including in the burlap-wrapped bales. Id. at 583, 103 S.Ct. 2573.
The Court of Appeals for the Fifth Circuit reversed the defendants’ convictions of drug-related charges, finding that the officers’ boarding of the sailboat was not reasonable under the Fourth Amendment because the boarding occurred absent reasonable suspicion of a violation of law. Id. The Supreme Court granted certiorari and reversed, holding that the officers’ suspicionless boarding of the sailboat was reasonable and thus consistent with the Fourth Amendment. The Court noted that while random stops of vehicles without articulable suspicion of unlawful conduct are impermissible, the nature of waterborne commerce in waters providing ready access to the open sea is sufficiently different from vehicular traffic on highways so that alternatives to the sort of stop made here would be less likely to accomplish the essential governmental purposes involved. Id. at 592-93, 103 S.Ct. 2573. In a footnote, the Villamonte-Marquez Court stated:
There is no issue in this case concerning the activities of the officers once they boarded the Henry Morgan II. The only question presented to this Court concerns the validity of the suspicionless boarding of the vessel for a document inspection.
Respondents, however, contend in the alternative that because the Customs officers were accompanied by a Louisiana State Policeman, and were following an informant’s tip that a vessel in the ship channel was thought to be carrying marijuana, they may not rely on the statute authorizing boarding for inspection of the vessel’s documentation. This line of reasoning was rejected in a similar situation in Scott v. United States, 436 U.S. 128, 135-139[ 98 S.Ct. 1717, 56 L.Ed.2d 168] (1978), and we again reject it. Acceptance of respondent’s argument would lead to the incongruous result criticized by Judge Campbell in his opinion in United States v. Arra, 630 F.2d 836, 846 ([1st Cir.] 1980): “We would see little logic in sanctioning such examinations of ordinary, unsuspect vessels but forbidding them in the case of suspected smugglers.”
462 U.S. at 584 n. 3, 103 S.Ct. 2573 (emphasis added).
The informant’s tip in Villamonte-Marquez bears no resemblance to the tip relaying specific criminal wrongdoing by Rodriguez; rather, it relayed that a vessel in the ship channel, not the particular sailboat boarded and searched, was thought to be carrying marijuana. Thus, the Supreme Court characterized as “suspicionless” the officers’ boarding of the sailboat in Villamonte-Marquez. Clearly, the marijuana seized in Villamonte-Marquez was discovered during the course of the document inspection, following the officers’ boarding of the sailboat to conduct a document inspection. In contrast, in the instant case, the allegedly stolen white truck at M & M was discovered during the course of an inspection prompted solely by a tip that relayed specific criminal wrongdoing by Rodriguez, i.e., that he possessed the stolen white truck. Dist. Ct. Op. at 3; R. 156 at 3.
B
Similarly, the remaining cases the majority relies on, like Villamonte-Marquez and unlike the instant case, did not involve direct criminal suspicion of wrongdoing and are thus also distinguishable. In *463 Bruce v. Beary, 498 F.3d 1232, 1235-36 (11th Cir.2007), a customer of Bruce’s auto body repair shop and salvage yard complained to an officer of the county auto-theft unit that he had purchased a car from Bruce at Bruce’s place of business, and that the vehicle identification number (VIN) plate did not match the confidential VIN sticker on the car. Officers decided to conduct an administrative inspection of the premises, pursuant to a Florida statute. Numerous officers surrounded the premises, entered with guns drawn, searched the employees and offices, and inspected more than 150 vehicles. Officers found what appeared to be a counterfeit VIN plate in Bruce’s briefcase, and several vehicles that had been reported stolen or were missing, or had altered, VIN plates. Shortly after, Bruce was arrested and charged with possession of loose VIN plates, and operating a chop shop. Id. at 1237. A few hours later, the officers obtained a search warrant and then seized files, office equipment, and over 100 vehicle titles and registrations. Id. at 1238.
Bruce brought suit under 42 U.S.C. § 1983, alleging that the administrative inspection violated the Fourth Amendment. The district court granted summary judgment to all the defendants, holding that there had been no constitutional violations. On appeal, Bruce argued
■ that an administrative inspection, pursuant to an authorizing statute, must be a routine, random, suspicionless visit to a business to inspect books and records. He asserts that any time law enforcement has “particularized suspicion” of illegal activity at a business and seeks to investigate and gather evidence, it must arrive warrant in hand.
Bruce relies heavily on the Supreme Court’s 2000 decision in [United States v.] Edmond, [531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000),] in which the Court consistently uses the term “suspicionless searches” to characterize administrative searches. 531 U.S. at 37[ 121 S.Ct. 447]. (“we have upheld brief, suspicionless seizures”). The Court in Edmond struck down a drug-interdiction checkpoint because its primary purpose was the detection of “ordinary criminal wrongdoing.” Id. at 41 [ 121 S.Ct. 447]. The Court said that “when government seeks to ferret out crime, it is expected to comply with the Fourth Amendment.” Id.
Furthermore, the Tenth Circuit’s recent decision in United States v. Johnson, 408 F.3d 1313, 1321 (10th Cir.2005), supports Bruce’s view. In Johnson, the Tenth Circuit stated that when the “evidence of criminal activity [is] so compelling that police have, in essence, probable cause to believe that specific criminal conduct has occurred,” they must get a warrant. Id. This is so, the court said, because Burger did not endorse a scheme that would allow a warrantless search based on recently discovered evidence that criminal activity had occurred. Id. Furthermore, the court said, inspections of business premises conducted not as part of a pre-planned and dispassionate administrative procedure but instead pursuant to direct criminal suspicion give cause for grave constitutional concern. Id.
The Eighth Circuit has also recognized the danger of allowing administrative searches to become “pretexts for ‘crime control.’ ” United States v. Knight, 306 F.3d 534, 537 (8th Cir.2002) (holding unconstitutional the administrative search of personal belongings conducted in that case).
We share our sister circuits’ concern that the administrative exception not be allowed to swallow the whole Fourth Amendment. See Swint v. City of Wad *464 ley, Ala., 51 F.3d 988, 998 (11th Cir.1995) (“Even in the context of administrative searches of business property, however, the Fourth Amendment limits warrantless searches”). Unless the warrant exception for administrative inspections of pervasively regulated businesses means that under no circumstances is law enforcement required to secure a warrant prior to entry, at some level of suspicion a warrant is required. In this era of pervasive regulation of most businesses, to interpret the exception otherwise might well give cause for general alarm.
We need not, however, address today the question of where to draw that line because we hold that under the circumstances of this case the officers did not cross it. The Supreme Court has made quite clear that an administrative search is not rendered invalid because it is accompanied by some suspicion of wrongdoing. In United States v. Villamonte-Marquez, 462 U.S. 579, 584 n. 3[ 103 S.Ct. 2573, 77 L.Ed.2d 22] (1983), the Court approved an administrative search that was prompted by an informant’s tip that a vessel was carrying marijuana, noting that there was “little logic in sanctioning ... examinations of ordinary, unsuspect vessels but forbidding them in the case of suspected smugglers” (quoting United States v. Arra, 630 F.2d 836, 846 (1st Cir.1980)).
We too have approved administrative searches in response to information giving rise to some suspicion of illegal activity. Crosby v. Paulk, 187 F.3d 1339, 1348, n. 12 (11th Cir.1999). In Crosby, officers conducted the administrative inspection of a nightclub as part of an ongoing criminal investigation into underage drinking and other alcohol violations. Id. at 1342. See also United States v. Thomas, 973 F.2d 1152, 1155-56 (5th Cir.1992) (administrative searches do not violate Constitution simply because of the existence of specific suspicion of wrongdoing); United States v. Nechy, 827 F.2d 1161, 1167 (7th Cir.1987); Arra, 630 F.2d at 846.
Even in Johnson, in which the Tenth Circuit cautioned against administrative searches in the service of particularized suspicion, the court upheld the warrant-less search at issue in the case, concluding that the officers did not have “direct criminal suspicion” of wrongdoing. 408 F.3d at 1321.
Similarly, in this case, the officers did not have “direct criminal suspicion” of wrongdoing. They received a criminal complaint regarding possible VIN violations at Bruce’s auto body shop. This information alone did not rise to the level of probable cause that would have supported application for a warrant. In the absence of such direct criminal suspicion, the officers validly invoked their statutory authority to inspect Bruce’s Premises to determine whether he was operating in accordance with Florida law governing use of VIN plates. Merely because the officers had “an objectively reasonable basis to suspect they might find stolen cars or car parts in their inspection does not invalidate that inspection.” Id. at 1323. Therefore, we hold that defendants were permitted to conduct a warrantless administrative inspection of Bruce’s Premises for the purpose of investigating VIN violations.
Bruce, 498 F.3d at 1241-42 (some citations and quotations omitted, emphasis added).
Just as Bruce acknowledges that the administrative inspection at issue there was valid given the absence of direct criminal suspicion, so does another case on which the majority relies, United States v. Johnson, 408 F.3d 1313, 1321-22 (10th Cir.2005) (upholding administrative inspection *465 where officers did not have direct criminal suspicion regarding the auto salvage shop or its employee, Johnson, but rather had “a vague suspicion that the kind of criminal activity the administrative scheme was directed towards detecting — car theft— had occurred or might be evident at the salvage yard where Johnson worked.”)
Another case the majority relies on is United States v. Thomas, 973 F.2d 1152, 1156 (5th Cir.1992), in which the defendant appealed his conviction of illegal activities involving alteration of VIN numbers. Texas had a Department of Public Safety (DPS) pilot program of documenting salvage vehicles that were not economically feasible to rebuild. The program’s purpose was to uncover illegal salvage-switch or VIN-switch operations. Under such schemes, the VIN from the salvage vehicle is switched to a stolen car, which is then sold under the guise of rebuilt salvage. After tracking a salvage vehicle to the defendant’s auto salvage business, a DPS investigator conducted an inventory inspection, during which he seized a vehicle and VIN plates, which provided the information needed to secure a search warrant of the defendant’s residence, at which VIN plates were found. Id. at 1155.
Unlike the instant case, there is no indication that the salvage vehicle’s mere presence at Thomas’s auto salvage business was illegal. The Fifth Circuit found merit-less the defendant’s argument that the search violated the Fourth Amendment “because it was not part of a scheme of periodic and frequent inspections, but rather, was targeted at gathering information concerning specific vehicles.” Id. Although the Fifth Circuit cited Villamonte-Marquez for the proposition that “specific suspicion of wrongdoing” will not invalidate an administrative inspection, 973 F.2d at 1155-56, the facts and holding in Thomas are in keeping with the distinction articulated since Burger between generalized or vague suspicion of wrongdoing and direct criminal suspicion.
Another Fifth Circuit case the majority cites, Club Retro, L.L. C. v. Hilton, 568 F.3d 181, 197-98 (5th Cir.2009) quotes from Burger, 482 U.S. at 724, 107 S.Ct. 2636: “In the law of administrative searches, one principle emerges with unusual clarity and unanimous acceptance: the government may not use an administrative inspection scheme to search for criminal violations.”
C
Since Burger, the Supreme Court has reiterated that where a warrantless administrative inspection of a closely-regulated business is conducted for the sole purpose of criminal investigation, the search is invalid. In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Court remarked:
We are reminded that in Florida v. Wells, 495 U.S. 1, 4[ 110 S.Ct. 1632, 109 L.Ed.2d 1] (1990), we stated that “an inventory search” must not be a ruse for a general rummaging in order to discover incriminating evidence”; that in Colorado v. Bertine, 479 U.S. 367, 372[ 107 S.Ct. 738, 93 L.Ed.2d 739] (1987), in approving an inventory search, we apparently thought it significant that there had been “no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation”; and that in New York v. Burger, 482 U.S. 691, 716-717, n. 27[ 107 S.Ct. 2636, 96 L.Ed.2d 601] (1987), we observed, in upholding the constitutionality of a warrantless administrative inspection, that the search did not appear to be “a ‘pretext’ for obtaining evidence of ... violation of ... penal laws.” But only an undiscerning reader would regard these cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause *466 to believe that a violation of law has occurred. In each case we were addressing the validity of a search conducted in the absence of probable cause. Our quoted statements simply explain that the exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes. See Bertine, supra, at 371-372[ 107 S.Ct. 738]; Burger, supra, at 702-703[ 107 S.Ct. 2636].
[W]e never held, outside the context of inventory search or administrative inspection ..., that an officer’s motive invalidates objectively justifiable behavior under the Fourth Amendment ...
Whren, 517 U.S. at 811-12, 116 S.Ct. 1769 (some emphasis added). And in Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), the Court reiterated in discussing qualified immunity that a warrant and probable cause are not needed for an administrative inspection of a closely-regulated business provided that the officer’s purpose was to “attend to the investigation for which the administrative inspection is justified”:
Fourth Amendment reasonableness is predominantly an objective inquiry. We ask whether “the circumstances, viewed objectively, justify [the challenged] action.” If so, that action was reasonable “whatever the subjective intent” motivating the relevant officials. Whren v. United States, 517 U.S. 806, 814[ 116 S.Ct. 1769, 135 L.Ed.2d 89] (1996). This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts; and it promotes evenhanded, uniform enforcement of the law.
Two limited exceptions to this rule are our special-needs and administrative-search cases, where “actual motivations” do matter. A judicial warrant and probable cause are not needed where the search or seizure is justified by special needs, beyond the normal need for law enforcement, such as the need to deter drug use in public schools, or the need to assure that railroad employees engaged in train operations are not under the influence of drugs or alcohol; and where the search or seizure is in execution of an administrative warrant authorizing, for example, an inspection of fire-damaged premises to determine the cause, or an inspection of residential premises to assure compliance with a housing code. But those exceptions do not apply where the officer’s purpose is not to attend to the special needs or to the investigation for which the administrative inspection is justified. See Whren, [517 U.S.] at 811—812[ 116 S.Ct. 1769]....
Apart from those cases, we have almost uniformly rejected invitations to probe subjective intent....
al-Kidd, 131 S.Ct. at 2080-81 (some citations and internal quotations omitted, some emphasis added.)
D
I agree with the district court that Defendants’ July 7 and 13, 2006 searches of M & M, and seizures of Rodriguez and property from M & M, prompted solely by their direct suspicion of Rodriguez’s criminal wrongdoing, were unreasonable under the Fourth Amendment,[30] Burger, 482 U.S. at 716 n. 27, 107 S.Ct. 2636; Whren, 517 U.S. at 811-12, 116 S.Ct. 1769, and that Rodriguez thus satisfied the first prong of the qualified immunity test. See Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003).
The second prong of qualified immunity is that the constitutional right violated was *467 clearly established at the time of defendants’ misconduct. al-Kidd, 131 S.Ct. at 2080, Feathers, 319 F.3d at 848. The prohibition on warrantless administrative inspections prompted solely by officials’ direct criminal suspicion, announced in Burger in 1987, has been consistently rearticulated by the Supreme Court thereafter. See Whren, 517 U.S. at 811-12 (and cases cited therein), al-Kidd, 131 S.Ct. at 2080-81.
Given that the inspection of M & M was unlawful from its inception, nothing discovered in the ensuing search could be used to support the required probable cause to seize property or arrest Rodriguez. See Bruce, 498 F.3d at 1248 (citing Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).
I would affirm the district court’s grant of partial summary judgment to Rodriguez on his claims that defendants’ searches and seizures violated the Fourth Amendment.

. Maj. Op. at-.

. Dist. Ct. Op./R. 156 at 21-22.